**E-Filed 2/23/10**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| CHUBB CUSTOM INSURANCE COMPANY, for itself and as the subrogee of, and in the name of TAUBE-KORET COMPUS FOR JEWISH LIFE,<br><br>Plaintiff,<br><br>v.<br><br>SPACE SYSTEMS/LORAL, INC., et al.,<br><br>Defendants. | Case Number C 09-4485 JF (PVT)<br><br>**ORDER[1] GRANTING MOTIONS TO DISMISS WITH LEAVE TO AMEND**<br><br>Re. docket nos. 19, 31, 36, 48 |

Plaintiff Chubb Custom Insurance Company ("Chubb") filed the instant action pursuant to the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq., and various state laws seeking recovery of costs it incurred on behalf of one if its insureds, the Taube-Koret Campus for Jewish Life ("Taube-Koret"). Chubb alleges that Defendants are jointly and severally liable for these costs, which were incurred in response to releases or threatened releases of hazardous substances at or near a location Taube-Koret

---

[1] This disposition is not designated for publication in the official reports.

Case No. C 09-4485 JF (PVT)
ORDER GRANTING MOTIONS TO DISMISS WITH LEAVE TO AMEND
(JFLC3)

currently owns.

Defendants Ford Motor Company ("Ford Motor"), Sun Microsystems, Inc. ("Sun"), Chevron Corporation ("Chevron"), and Harman Stevenson Inc. ("Stevenson") move to dismiss or strike portions of Chubb's complaint or, in the alternative, for a more definite statement.

For the reasons discussed below, the motions to dismiss will be granted, with leave to amend.

## I. BACKGROUND

This action involves a forty-seven-acre tract of land in Palo Alto, California ("the Site"). Chubb alleges that the Site was owned and occupied by Defendant Ford Aerospace & Communications Corporation ("Ford Aerospace") from approximately 1959 until 1990 and "used . . . to manufacture and/or build satellites." (Complaint ¶ 10.) It alleges that at some point, Ford Motor sold the assets of Ford Aerospace to Defendant Space Systems/Loral, Inc. ("SS/L"). (*Id*. at ¶¶ 11-12.) At another unspecified time, Sun bought a twelve-acre parcel of the Site from Ford Aerospace; it owned and operated that parcel, which included a building and an adjoining parking lot, until June 2002. (*Id.* at ¶ 13.) In June 2002, Taube-Koret purchased the twelve-acre parcel from Sun. (*Id.* at ¶ 18.) In 2003, the parcel was divided into a four-acre parcel and an eight-acre parcel, the latter of which Taube-Koret owns today. (*Id.*) Chubb alleges that Chevron owned and/or operated a gas station near the Site between 1960 and 1977. (*Id.* at ¶ 14.) Chubb also alleges that Stevenson owned and/or operated a Kentucky Fried Chicken ("KFC") restaurant on the same parcel between 1977 and 2007. (*Id.* at ¶ 15.)

Following Taube-Koret's acquisition of the eight-acre parcel formerly owned by Sun and Ford Aerospace, Taube Koret "was named as a discharger [of hazardous substances] with respect to the Site by the California Regional Water Quality Control Board ("RWQCB"). . . . [Taube-Koret] was held strictly liable for complying with certain Cleanup Orders issued by RWQCB, even though [Taube-Koret] did not discharge or caused [sic] to be discharged the hazardous substances that resulted in the issuance of the Cleanup Orders." (*Id.* at ¶ 20.)

As a result of the Cleanup Orders and other orders issued by governmental agencies such as the California Department of Toxic Substances, Taube-Koret "made claims pursuant to an

2

insurance policy issued by Chubb, for costs and defense costs incurred and to be incurred in connection with the investigation, defense, and clean up of hazardous substances on and around" the eight-acre parcel. (*Id.* at ¶ 22.) In response to the claims, Chubb "made payments on behalf of [Taube-Koret] in an amount in excess of $2,400,000 . . . for such costs and defense costs incurred and to be incurred in connection with the investigation, defense, and clean up of hazardous substances." (*Id.* at ¶ 23.)

On September 23, 2009, Chubb filed the instant action, alleging that Defendants each bear responsibility for the hazardous substances that prompted the Cleanup Orders and other governmental action and seeking recovery for the costs it has incurred on behalf of Taube-Koret.

## II. LEGAL STANDARD

### A. Motions to dismiss for failure to state a claim

Dismissal under Fed. R. Civ. P. 12(b)(6) "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the court must construe the complaint in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). At the same time, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Thus, a court need not accept as true conclusory allegations, unreasonable inferences, legal characterizations, or unwarranted deductions of fact contained in the complaint. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-755 (9th Cir. 1994). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. —, 129 S.Ct. 1937, 1590 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). In addition, a "court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck Ranch v. Bureau of*

3

Case No. C 09-4485 JF (PVT)
ORDER GRANTING MOTIONS TO DISMISS WITH LEAVE TO AMEND
(JFLC3)

*Reclamation*, 823 F. Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)).

Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't of Corrs.*, 66 F.3d 245, 248 (9th Cir. 1995). When amendment would be futile, however, dismissal may be ordered with prejudice. *Dumas v. Kipp,* 90 F.3d 386, 393 (9th Cir. 1996).

### III. DISCUSSION

Moving Defendants challenge the complaint in its entirety and as to certain claims individually.

**A.     Motions to Dismiss for Failure to State a Claim**

    **1.     General challenges**

        **A.     Failure to state a claim "plausible on its face"**

Chevron, Stevenson, and Sun all argue in a similar manner that the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570.) As one district court in this circuit commented recently:

> In *Iqbal* the Supreme Court set forth a two-pronged approach by which courts were to review the sufficiency of allegations in a complaint. First, a court reviews the complaint and discounts any allegations therein that amount to little more than "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." 129 S.Ct. at 1949. A complaint must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Next, the court examines the remaining allegations to determine whether they "state a plausible claim for relief," with the understanding that such allegations are accepted as being true and any reasonable inferences that arise therefrom are to be accorded in the pleader's favor. *Id.* at 1950. A claim is plausible, as opposed to merely possible, if its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. In contrast, a complaint alleging facts that are "merely consistent with a defendant's liability, stops short of the line between possibility and plausibility of entitlement to relief." *Id.*

*Gordon v. City of Moreno Valley*, --- F.Supp.2d ----, 2009 WL 3088557 (C.D.Cal. Aug. 31, 2009).

        **i.     Chevron**

Chevron argues that the allegations in the Complaint that pertain to it are "mere legal

4

conclusions" and do not survive the first prong of the *Iqbal* test. (Chevron Mot. to Dismiss ("MTD") 8:1.) With regard to the second prong, Chevron contends that the complaint, "stripped of its legal conclusions and formulaic recitation of the elements of the causes of action," does not state claims upon which relief can be granted against Chevron. (*Id.* at 8:10-11.) As an example, Chevron asserts that the Complaint provides "no facts describing where, when or how any of the alleged hazardous substances were released from the gasoline service station." (*Id.* at 8:2-3.)

Chubb contends that Chevron's application of *Iqbal* is overly broad. It argues that "the two prong test articulated in *Iqbal* is not required, as it is merely a suggestion." (Pl.'s Opp. to Chevron's MTD 6:13-14.) It seeks to distinguish the issues in this case from those before the Supreme Court in *Twombly* and *Iqbal*, arguing that "Plaintiff seeks recovery of environmental clean up costs paid, from those responsible for causing the environmental pollution–which is wholly consistent with [sic] legislative purpose of CERCLA," (*Id.* at 7:1-3), and that "[n]owhere does CERCLA require the level of factual specificity demanded by Defendants." (*Id.* at 7:8.)

With respect to its actual allegations, Chubb cites *Ascon Properties v. Mobil Oil Company* for the proposition that "a plaintiff need not allege the particular manner in which a release or threatened release of hazardous substance had occurred in order to establish a prima facie case under CERCLA." (*Id.* at 7:15-17 (citing 866 F.2d 1149, 1153 (9th Cir 1989).) It maintains that *Ascon* still is good law even after *Twombly* and *Iqbal* because the court "did not rely upon a literal read of *Conley*[ *v. Gibson*'s] 'no set of facts' language abrogated in *Twombly*," but rather "keenly understood that conclusory allegations were insufficient to state a claim entitling one to relief." (*Id.* at 9:10-11; 16-17.)

Chubb argues that its complaint satisfies the requirements of *Ascon*, *Iqbal*, and *Twombly* for pleading in the context of CERCLA. It contends that the complaint includes allegations regarding "**when**, **where**, and **how** the pollution occurred, **what** hazardous substances polluted the environment, **how** much was spent in cleaning up the pollution, **why** the Plaintiff incurred response costs, and **who** was responsible for causing the pollution." (*Id.* at 8:8-10 (emphasis in original).)

In reply, Chevron claims that Chubb's opposition papers "make[] a number of 'factual'

5

assertions not found in, and in fact often contradiction [sic] by, its Complaint." (Chevron's MTD Reply 2:3-4.) Among these assertions is the implication that the Chevron gas station used Perchloroethlyle ("PCE") and Trichloroethylene ("TCE"), the two chemicals alleged to have been cleaned up from the parcel owned by Taube-Koret. The complaint, however, "merely alleges that the Chevron service station–which was not within 'the Site'–used unspecified 'hazardous substances.'" (*Id.* at 2:18-19 (citing Complaint ¶ 14).)

Chevron also takes issue with Chubb's legal argument that *Ascon* still is viable. It contends that under *Iqbal* and *Twombly* a CERCLA plaintiff must present more than the "some evidence" the *Ascon* court found sufficient, and that there is no legal authority for the position that the *Iqbal* standard is inapplicable in certain types of cases. Chevron asserts that Chubb cannot meet even the "some facts" standard from *Ascon* court because the complaint does not "establish[] a factual connection between the defendant who allegedly released the hazardous waste and the contamination that existed at the property which needed to be cleaned up." (*Id.* 7:8-10.) According to Chevron, "the deficient factual allegations in the Complaint can establish nothing more than that a gasoline service station allegedly owned/operated by Chevron existed at one location, that Taube-Koret cleaned up contamination at another location, and that Chubb paid claims made by Taube-Koret for a portion of the clean-up costs." (*Id.* at 3:17-20.)

The Court agrees with Chevron that *Iqbal* provides the correct framework for analyzing the sufficiency of a civil complaint and that the pleading at issue here does not satisfy *Iqbal* with respect to its claims against Chevron. Chubb fails to allege any facts that could support an inference connecting the gas station, which is not alleged to have been located within the boundaries of the Site, to the clean-up on the parcel Taube-Koret currently owns. (*Contrast* Complaint ¶ 17 ("The Site comprises approximately 47 acres and includes the properties located at 3825, 3963, and 3977 Fabian Way and 901 San Antonio Road.") *with* Complaint ¶ 14 ("Defendant Chevron . . . owned and/or operated a gas station which occupied the southeast corner of 851 San Antonio Road.").) Chubb will be granted leave to amend its complaint to allege such facts should they exist.

### ii.     Stevenson

Stevenson's argument largely mirrors Chevron's, as Stevenson's KFC restaurant is alleged to have occupied from 1977 to 2007 the same location that Chevron's gas station occupied from 1960 to 1977. Stevenson's motion is well taken for the same reasons as Chevron's.

### iii.     Sun's general challenge to CERCLA claims

Sun also contends that the complaint does not satisfy the heightened pleading standards established in *Twombly* and *Iqbal*, but its arguments are distinct from those of the other Defendants in several respects. Among other things, Sun argues that Chubb's allegations are insufficient to state a claim for relief under CERCLA because "the allegation that Sun is liable as a former owner or operator of the facility is inadequately plead [sic] and lacks factual support." (Sun's MTD 7:20-21.)

Sun first asserts that the complaint fails to allege disposal of hazardous substances during the period of Sun's ownership, claiming only that "[t]here were releases of hazardous substances from [the location owned/operated by Sun] during Sun Mircrosystem's period of ownership and/or operation." (Complaint ¶ 13.) Similarly, Paragraph 28 of the complaint alleges that "[t]he presence of hazardous substances, including but not limited to, PCE and TCE, in the soil and groundwater at the Site constitute a release or threatened release of hazardous substances into the Environment." (*Id.* at ¶ 28 (citation omitted).) According to Sun, the language of Paragraph 28 demonstrates that Chubb does not use the term "release" in a way that could include the term "disposal," and Chubb "makes no attempt to even identify an activity that could have resulted in the disposal of hazardous substances during Sun's ownership or operation of the facility." (Sun's MTD 8:11-12.) As argued by Sun, the Ninth Circuit has held that a past owner is not liable under CERCLA if there was no disposal during the past owner's period of ownership even if hazardous substances were present during that period. *See Carson Harbor Village, Ltd. v. Unocal Corp.*, 270 F.3d 863, 874 (9th Cir. 2001). Sun also contends that Chubb's allegation of liability is a "mere legal conclusion couched as a factual allegation, and therefore is not entitled to the assumption of truth," (Sun's MTD 9:3-4), and that the complaint does not provide any

7

"indication that Chubb incurred cleanup costs from releases of hazardous substances that Sun released, if any." (*Id.* at 9:10-11.) While Chubb points out correctly that it "is not required to plead the manner in which Sun polluted its environment with pinpoint accuracy," the Court agrees with Sun that the factual allegations in the complaint are insufficient to establish that Sun is an owner or operator under the statute. (Pl.'s Opp. to Sun's MTD 11:18-19.)

Though the Court concludes that the complaint is subject to dismissal under *Iqbal* and *Twombly*, leave to amend will be granted, and accordingly the Court will discuss some of Defendants' specific challenges to Chubb's claims in hopes of streamlining the litigation going forward. Particularly important are the challenges to Chubb's first three claims, as they are the only federal claims in the complaint. While federal courts may exercise supplemental jurisdiction over state-law claims "that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," 28 U.S.C. § 1367(a), a court may decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction," *id*. § 1367(c)(3). Indeed, unless "considerations of judicial economy, convenience[,] and fairness to litigants" weigh in favor of the exercise of supplemental jurisdiction, "a federal court should hesitate to exercise jurisdiction over state claims." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity."); *accord City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156 (1997).

**2.      Challenges to Count I for cost recovery under CERCLA § 107(a)**

Chevron and Sun argue that Chubb does not have standing to bring an independent claim under Section 107(a). They rely on *California Department of Toxic Substances Control v. City of Chico*, 297 F. Supp. 2d 1227 (E.D. Cal. 2004). In that case, the court found that, while the insurer could bring a subrogation action under CERCLA, if it were allowed to bring a direct action under Section 107, "CERCLA's subrogation provision would be rendered nugatory." 297 F. Supp. 2d at 1233; *see also Am. Int'l Specialty Lines Co. v. United States*, 2005 WL 680159 at

8

*4 (N.D. Cal. Mar. 24, 2005) (applying same reasoning). While Chubb fails to respond to Chevron's standing argument, it attempts to distinguish *City of Chico* in its opposition to Sun's motion. That attempt, however, appears in the context of Chubb's argument in support of its subrogation claim. At no point does Chubb explain why its Section 107 claim for cost recovery should not suffer the same fate as the insurance company's claim in *City of Chico*.

Until Chubb can establish that it has standing to bring a Section 107(a) claim, the Court need not determine if the requisite elements of the claim have been pled adequately. Nonetheless, Ford's additional arguments with respect to Chubb's Section 107 claim are relevant to any and all CERCLA claims that survive Defendants' motions to dismiss. In particular, Chubb must allege facts sufficient to support a conclusion that Ford Motor Company, as distinct from or as the parent company of Ford Aerospace, is liable under the statute.

### 3. Challenges to Count II for recovery under CERCLA § 112(c)

Chevron and Sun also rely on *City of Chico* and *Am. Int'l Specialty Lines* in arguing that Chubb's claim for subrogation under Section 112(c) should be dismissed because it is not ripe. Section 112(c) provides that any person "who pays compensation pursuant to this chapter to any claimant for damages or costs resulting from the release of a hazardous substance shall be subrogated to all rights, claims, and causes of action for such damages and costs of removal that the claimant has under this chapter or any other law." 42 U.S.C. § 9612(c)(2). The court in *City of Chico* recognized that, "absent an agreement to the contrary, an insurance company may not enforce a right to subrogation until the insured has been fully compensated, that is, has been made whole." 297 F. Supp. 2d at 1236. Defendants point out that Chubb has not alleged that it has made Taube-Koret whole, but instead has "alleged ongoing response costs–seeking 'costs and defense costs incurred and to be incurred.'" (Sun's MTD 5:12 (citing Complaint ¶¶ 23, 38).) *See City of Chico*, 297 F. Supp. 2d at 1236 ("[Insurer's] ability to exercise its right to subrogation under [§ 112(c)] depends on whether that claim is ripe.").

Chubb attempts to distinguish the cases relied upon by Defendants. It claims that Taube-Koret has been made whole by Chubb and does not seek recovery separate from Chubb. Chubb also argues that as Taube-Koret's subrogee, it "stands in the shoes of [Taube-Koret] and only

9

Case No. C 09-4485 JF (PVT)
ORDER GRANTING MOTIONS TO DISMISS WITH LEAVE TO AMEND
(JFLC3)

seeks to recover no more and no less than what [Taube-Koret] would be entitled to recover from [Defendants] . . . on its own." (Pl.'s Opp. to Sun's MTD 6:18-20.) Defendants respond that Chubb's claim that Taube-Koret has been made whole is inconsistent with the allegations of the complaint. Sun points out that "in no fewer than 23 paragraphs in the Complaint, Chubb references future costs to be paid by Chubb or its insured, implying that the costs contiue and therefore [Taube-Koret] is not yet finished with its obligations." (Sun MTD Reply 3-5 (citing Complaint ¶¶ 23, 38, 53, 58, 62, 67, 68-73, 77, 84, and 85-89).)

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir.1990). The Court agrees with Defendants that based on the allegations *in the complaint*, Chubb has not made Taube-Koret whole and its action for subrogation under CERCLA therefore is not ripe at the present time. If the actual facts are otherwise, Chubb may amend the pleading accordingly, though, as Sun oberves, "[t]o support such allegations, Chubb must drop its claim for future costs and for declaratory judgment." (Sun MTD Reply 6:11-12.)

Ford argues that Chubb has failed to allege sufficient facts to support its subrogation claim. Because the allegations of the current complaint fail to establish that the claim is ripe, the Court need not reach this issue. However, in amending its complaint, Chubb should plead with sufficient particularity the circumstances surrounding the compensation it has paid on behalf of Taube-Koret and the "rights, claims, and causes of action" belonging to Taube-Koret for which it is seeking subrogation under Section 112(c).

**4.    Challenges to Count III for contribution under CERCLA § 113(f)**

Chevron, Ford, and Sun argue that Chubb's claim for contribution under § 113(f) also must be dismissed. Relying on *City of Chico*, they contend that an insurer "may not bring its own independent contribution claim because it is not itself a [Potentially Responsible Party ("PRP")]" and "may not exercise its subrogee's rights until the total amount of response costs for which [its insured] is responsible is determined through the contribution action and until it has been fully compensated for its losses." 297 F. Supp. 2d at 1238.

Defendants also contend that, even if Chubb had standing to bring such a claim, Chubb's

10

Case No. C 09-4485 JF (PVT)
ORDER GRANTING MOTIONS TO DISMISS WITH LEAVE TO AMEND
(JFLC3)

§ 113(f) claim is insufficient because Chubb has not been sued for cost recovery. In *Cooper Industries, Inc. v. Aviall Services Inc.*, 543 U.S. 157 (2004), the Supreme Court held that "Section 113(f)(1), 100 Stat. 1647, authorizes contribution claims only 'during or following' a civil action under § 106 or § 107(a)." 543 U.S. at 168. Because Chubb does not allege that it has been subject to a suit under either provision, Defendants argue that its § 113(f) must be dismissed.

Although Chubb alleges that Taube-Koret was subject to the RWQCB Cleanup Orders, it does not argue that these orders qualify as civil actions under Sections 106 or 107. Instead, it contends that if the Court dismisses its contribution claim under Section 113(f), "Plaintiff has pled its rights in the alternative as against Ford under § 107(a) for contribution." (Pl.'s Opp. to Ford Motor's MTD 16:16-17.) Chubb argues that this approach is consistent with the Supreme Court's ruling in *United States v. Atlantic Research Corp.*, 551 U.S. 128 (2007). According to Chubb, that case "held that because § 107(a)(4)(B) permits a PRP to recover costs from other PRPs, the statute provides a PRP with a cause of action." (*Id*. at 16:1 (citing *Atlantic Research Corp.*, 551 U.S. at 141).) However, *Atlantic Research Corp.* does not establish under either § 107(a) or § 113(f), a right of action for an insurer who *is not a PRP* and that has not been subject to civil action under either Section 106 or 107.

### 5. Challenges to Count IV for contractual subrogation

Ford Motor and Chevron both move to dismiss Chubb's claim for contractual subrogation. Chevron argues persuasively that based on the present allegations in the complaint, the claim is not ripe. Ford Motor claims that even if the claim were ripe it still would have to be dismissed because "Chubb states no facts indicating what response costs [Taube-Koret] incurred or demonstrating that Chubb's subrogation right was triggered under the policy." (Ford Motor's MTD 9:5-6.) Specifically, Ford Motor contends that Chubb "does not plead facts indicating [Taube-Koret] has incurred response costs or that Ford is liable under CERCLA," and that accordingly Chubb's subrogation rights under Section IV, Paragraph 17 of its policy have not been triggered. For the reasons discussed previously, this argument also is well-taken and should be addressed in an amended pleading.

11

### 6. Challenges to Count V for equitable subrogation

Chevron and Ford Motor both move to dismiss Chubb's claim for equitable subrogation. Their challenges are well-taken for the reasons discussed above.

### 7. Challenges to Count VI for declaratory relief under CERCLA § 113(g)(2)

Chubb's claim for declaratory relief depends on the viability of one or more of its underlying CERCLA claims.

### 8. Challenges to Count VII for statutory indemnity under California Health and Safety Code

Chevron, Ford, and Sun move to dismiss Chubb's claim for statutory indemnity under the California Health and Safety Code. Although Chevron offers several grounds for dismissal of this claim, the first is unopposed by Chubb and is dispositive: the California Health and Safety Code does not impose retroactive liability and exempts all acts that occurred before January 1, 1982. Cal. Health & Safety Code § 25366(a) ("(a) This chapter shall not be construed as imposing any new liability associated with acts that occurred on or before January 1, 1982, if the acts were not in violation of existing state or federal laws at the time they occurred.") Unless Chubb can allege facts establishing Chevron's liability for acts or omissions occurring after that date, Chubb cannot remedy this defect with respect to Chevron.

Ford Motor's motion as to this claim is based on the same ground as many of its other motions–that Chubb has not established Ford Motor's liability or incurred costs recoverable under CERCLA. While Ford Motor's point is well taken with respect to the current pleading, Chubb may be able to plead additional facts sufficient to satisfy *Iqbal* and *Twombly* as to at least one CERCLA claim in an amended pleading.

Sun contends that the Court should construe Count VII as a claim for indemnity only under California Health and Safety Code § 25363(e) because that is the only specific provision cited in the complaint. Section 25363(e) provides that "[a]ny person who has incurred removal or remedial action costs in accordance with this chapter or the federal act [may] seek contribution or indemnity from any person who is liable pursuant to this chapter." Cal. Health & Safety Code § 25363(e). Sun argues that this claim fails both because the complaint does not allege that

12

Chubb's costs were incurred "in accordance with this chapter" and because Chubb does not allege that Sun is "liable pursuant to this chapter."

In order to satisfy the statute's requirement that removal or remedial action costs be incurred "in accordance with [the Hazardous Substances Account Act ("HSAA")]," a plaintiff must show that the actions were "based upon and no less stringent than all of the following requirements: the National Contingency Plan ("NCP") located at 40 C.F.R. Part 300; certain portions of the California Water Code and its implementing regulations; and any applicable provisions of the HSAA. Cal. Health and Safety Code § 25356.1.5(a). Chubb alleges that its "response costs were and are being incurred in a manner *not inconsistent with* the National Contingency Plan." (Complaint ¶ 30 (emphasis added).) Sun argues that this is insufficient to meet the "in accordance with" requirement because being "not inconsistent with" the NCP requires less than being in accordance with the plan.

Chubb argues that it "has set forth factual allegations showing that it incurred removal or remedial action costs in accordance with CERCLA, as the response costs incurred by [Taube-Koret] were consistent with NCP." (Pl.'s Opp. to Sun's MTD 17:13-15 (citing Complaint ¶¶ 30, 77, 82). Although its current pleading is insufficient, Chubb could survive a future motion to dismiss this claim if it can allege with specificity that it meets the requirements set forth in Section 25356.1(a).

**9.     Challenges to Count VIII for statutory indemnity under California Water Code**

Chevron, Sun, and Ford Motor move to dismiss Chubb's eighth claim because, among other things, the California Porter-Cologne Water Quality Control Act does not provide an independent basis for indemnity. *See* Cal. Water Code § 13350(i). This argument is well taken.

**10.     Challenges to Count IX for equitable indemnity**

Chevron moves to dismiss Chubb's ninth claim because Chubb does not allege that it is jointly and severally liable with Chevron or any other Defendant. Chevron relies upon *Stop Loss Ins. Brokers, Inc. v. Brown & Toland Medical Group*, 143 Cal. App. 4th 1036, 1040 (2006) ("[E]quitable indemnity is only available among tortfeasors who are jointly and severally liable

13
Case No. C 09-4485 JF (PVT)
ORDER GRANTING MOTIONS TO DISMISS WITH LEAVE TO AMEND
(JFLC3)

for the plaintiff's injury.") Ford Motor argues additionally that this claim should be dismissed because the complaint fails to allege any facts showing Ford Motor's liability.

Chubb cites *Aetna Life & Cas. Co. v. Ford Motor Co.*, 50 Cal. App. 3d 49, 52 (1975) for the proposition that equitable indemnity "applies in cases in which one party pays a debt for which another is primarily liable and which in equity and good conscience should have been paid by the latter party." However, nothing in *Aetna* is inconsistent with Chevron's argument that equitable indemnity is reserved for joint tortfeasors. In fact, *Aetna* holds that an "essential ingredient of Aetna's cause of action for implied indemnity" was "that Aetna was secondarily liable for a wrong for which Ford was primarily liable." *Id.* at 53. Chubb makes no such allegation in the complaint and must do so to survive a future motion to dismiss this claim.

**11.    Challenge to Count X for declaratory relief under state law**

Ford Motor argues correctly that unless and until a substantive claim against it is alleged sufficiently, Chubb cannot pursue a claim for declaratory relief.

**12.    Challenges to Counts XI and XII for attorneys' fees pursuant to California Code of Civil Procedure §§ 1021.5 and 1021.6**

Several Defendants move to dismiss Chubb's claims for attorneys' fees because they are not independent claims. Again, Defendants' position is well taken. Upon noticed motion, the Court has the discretion to award attorneys' fees to the prevailing party if statutory requirements are met. *See, e.g.*, *Hospital Systems, Inc. v. Office of Statewide Health*, 25 Cal. App. 4th 1686, 1691-92 (Cal. Ct. App. 1994) ("A motion under section 1021.5 does not create a new cause of action . . . , much less a new action." (internal citations and quotations omitted)).

**B.    Motions to Strike Portions of the Complaint and for a More Definite Statement**

Because Defendants' motions to dismiss will be granted with leave to amend, the Court need not address Defendants' alternative motions to strike portions of the complaint or for a more definite statement.

//
//
//

# IV. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss will be granted, with leave to amend in a manner consistent with this order.

Any amended complaint shall be filed within thirty (30) days of the date of this order.

**IT IS SO ORDERED.**

DATED: 2/23/10

_____
JEREMY FOGEL
United States District Judge