KEVIN T. HAROFF (SBN 123126)
KATHERINE A. WOLF (SBN 267763)
SHOOK, HARDY & BACON L.L.P.
333 Bush Street, Suite 600
San Francisco, California  94104-2828
Telephone:      (415) 544-1900
Facsimile:      (415) 391-0281
Email:          kharoff@shb.com

Attorneys for Defendant
FORD MOTOR COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHUBB CUSTOM INSURANCE COMPANY, for itself and as subrogee of, and in the name of TAUBE-KORET CAMPUS FOR JEWISH LIFE,<br><br>            Plaintiff,<br><br>    vs.<br><br>SPACE SYSTEMS/LORAL, INC., a Delaware corporation, directly and as successor in interest to FORD AEROSPACE & COMMUNICATIONS CORPORATION, FORD MOTOR COMPANY, a Delaware corporation, as predecessor in interest to FORD AEROSPACE & COMMUNICATIONS CORPORATION, SUN MICROSYSTEMS, INC., a Delaware corporation, CHEVRON CORPORATION, a Delaware corporation, and HARMAN STEVENSON INC., a California corporation, dba KFC,<br><br>            Defendants. | Case No. C 09-04485 JF (PVT)<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANT FORD MOTOR COMPANY TO DISMISS AND STRIKE FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P.  12(B)(6) AND 12(F); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>First Amended Complaint Filed: March 25, 2010<br><br>Date:          June 18, 2010<br>Time:          9:00 A.M.<br>Courtroom:      3 (5th Floor)<br><br>The Hon. Jeremy D. Fogel, Presiding |

# NOTICE OF MOTION AND MOTION

TO THE CLERK OF COURT, ALL PARTIES AND ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on Friday, June 18, 2010, at 9:00 A.M., or as soon thereafter as counsel may be heard, before the Honorable Jeremy D. Fogel in Courtroom 3 of the above-entitled Court, located at 280 1st Street, San Jose, California, Defendant Ford Motor Company will, and hereby does, move for an order pursuant to Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure.

The Motion seeks dismissal of each and every claim set forth in the first amended complaint on the grounds that plaintiff has failed to state claims on which relief may be granted. The Motion also requests that the Court strike plaintiff's demand for a jury trial and such other allegations that are immaterial and without basis in law or fact.

The Motion is based on this Notice of Motion and Motion and accompanying Memorandum of Points and Authorities, the pleadings of record in this action, and any further submissions or argument of counsel as the Court may permit at the time of hearing.

Dated: May 3, 2010                                  SHOOK, HARDY & BACON LLP


By:    /s/ Kevin T. Haroff

KEVIN T. HAROFF
Attorneys for Defendant
FORD MOTOR COMPANY

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

STANDARD OF REVIEW ................................................................................................. 3

ARGUMENT ...................................................................................................................... 3

I.  Chubb's CERCLA Cause of Action Fails to State a claim on which relief
    may be granted under FRCP 12(b)(6) .................................................................... 3

    A.  Chubb has Failed to Establish Standing to Recover Costs
        Under CERCLA § 107(a) ............................................................................. 4

    B.  Chubb has Failed to Allege Facts Sufficient to Establish a Claim
        for Subrogation Under CERCLA § 112(c) ................................................... 4

    C.  Chubb has not Alleged Facts Sufficient to Show that Chubb has Paid
        "Compensation Under This Act" Subject to CERCLA § 112(c) .................. 5

    D.  Chubb has not Pled the Existence of "Rights, Claims or Causes of
        Action" Against Ford Motor for Purposes of CERCLA § 112(c) ............... 7

        1.  Chubb has not Established that Ford Motor is Liable as an
            Owner or Operator Under CERCLA § 107(a)(1) ............................. 8

        2.  Chubb has not Established that Ford Motor is Liable as an
            Arranger Under CERCLA § 107(a)(3) ............................................. 10

    E.  Chubb's CERCLA Claims are Barred under CERCLA § 113(g) ............... 13

II. Chubb's State Law Claims Should be Dismissed Both for Lack of Jurisdiction
    and on Their Merits ............................................................................................... 14

    A.  Chubb's Contractual and Equitable Subrogation Causes of Action
        do not State Independent Claims ................................................................. 15

    B.  Chubb's Statutory Indemnity Cause of Action Fails to State a Claim
        Under the California Health & Safety Code ................................................ 16

    C.  Chubb's Common Law Causes of Action Fail to State Claims for
        Relief to Which Chubb May be Entitled ..................................................... 16

III. The Court Should Strike Allegations and Claims for Relief Regarding Ford Motor
     Under FRCP 12(f) ................................................................................................. 17

    A.  Chubb's Allegations Regarding Ford Motor's Contractual Obligations
        to Indemnify Any Party Should be Stricken as Irrelevant .......................... 18

    B.  The Court Should Strike Chubb's Allegation Regarding Ford Motor's
        Purported Use of Ford Aerospace Pension Funds ...................................... 19

    C.  Chubb's Prayer for Relief Should be Struck to the Extent It Seeks Recovery
        of Future Costs or Relies on Any Purported Indemnity Agreement ........... 19

IV. Chubb's Demand for a Jury Trial Should be Stricken Under FRCP 12(F) as
    Without a Basis in Law .......................................................................................... 20

CONCLUSION ................................................................................................................. 20

i

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

*Am. Int'l Spec. Lines Ins. Co. v. United States*, 2005 WL 680159 (N.D. Cal. Mar. 24, 2005) .... 4, 5, 6

4

*Arrow Louver and Damper Div. of Arrow United Ind. Inc. v. N.Y. City Transit Auth.*,
    482 N.Y.S.2d 844 (N.Y. App. Div. 1984) ....................................................................... 11

5

6

*Ashcroft v. Iqbal*, 556 U.S. –, 129 S. Ct. 1937 (2009) ................................................... 3, 16

7

*Basic Mgmt. v. United States*, 569 F. Supp. 2d 1106 (D. Nev. 2008) ............................... 12

8

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007) ............................................. 3, 9, 16

9

*Cal. Department of Toxic Substances v. City of Chico*, 297 F. Supp. 2d 1227 (E.D. Cal. 2004)......... 4

10

*Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028 (C.D. Cal. 2002) . 20

*Clegg v. Cult Awareness Network*, 18 F.3d 752 (9th Cir. 1994) ......................................... 3

11

*Coeur D'Alene Tribe v. Asarco, Inc.*, 280 F. Supp. 2d 1094 (D. Idaho 2003) ........................... 11, 12

12

*Doe v. Unocal Corporation*, 248 F.3d 915 (9th Cir. 2001) ................................................... 8

13

*Dumas v. Kipp*, 90 F.3d 386 (9th Cir. 1996)........................................................................ 3

14

*Durning v. First Boston Corp.*, 815 F.2d 1265 (9th Cir. 1987) ........................................... 3

15

*Edge Management Consulting, Inc. v. Blank*, 807 N.Y.S.2d 353 (N.Y. App. Div. 2006) ................ 11

16

*Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) .................................... 17, 18

17

*Fireman's Fund Ins. Co. v. Wilshire Film Ventures, Inc.*, 52 Cal. App. 4th 553 (1997) ................ 15

18

*Infinet Marketing Services, Inc. v. Am. Motorist Ins. Co.*, 150 Cal. App. 4th 168 (2007) ............... 11

19

*Lucas v. Dep't of Corrs.*, 66 F.3d 245 (9th Cir. 1995)........................................................ 3

20

*Mancini v. The Ins. Corp. of N.Y.*, 2008 U.S. Dist. LEXIS 43954 (S.D. Cal. May 29, 2008) ..... 18, 19

21

*Mangini v. Aerojet-General Corporation*, 12 Cal. 4th 1087 (1996)..................................... 17

22

*Rosales v. Citibank*, 133 F. Supp. 2d 1177 (N.D. Cal. 2001) ........................................... 19

23

*Sumner Peck Ranch v. Bureau of Reclamation*, 823 F. Supp. 715 (E.D. Cal. 1993) ..................... 3

24

*Survivor Productions LLC v. Fox Broad. Co.*, 2001 U.S. Dist. LEXIS 25512 (C.D. Cal. 2001)....... 20

25

*Table Bluff Reservation v. Philip Morris, et al.*, 256 F.3d 879 (9th Cir. 2000)................................. 11

26

*United States v. Bestfoods*. 524 U.S. 51 (1998) ................................................................ 8, 9

27

28

ii

**Statutes & Regulations**

28 U.S.C. § 1367(a) ................................................................................................. 14

28 U.S.C. § 2201 ....................................................................................................... 5

40 C.F.R. § 300.410 ................................................................................................ 14

40 C.F.R. § 300.415 ................................................................................................ 14

40 C.F.R. § 300.420 ................................................................................................ 14

40 C.F.R. § 300.435 ................................................................................................ 14

42 U.S.C. §§ 9601 et seq. .......................................................................................... 1

42 U.S.C. § 9606 ....................................................................................................... 5

42 U.S.C. § 9607(a) ......................................................................................... passim

42 U.S.C. § 9612(c) ......................................................................................... passim

42 U.S.C. § 9613(g)(2) ................................................................................. 5, 13, 14

42 U.S.C. § 9613(g)(4) ............................................................................................ 13

Cal. Civ. Proc. Code § 338(b) ................................................................................. 16

Cal. Civ. Proc. Code § 1021.1 ................................................................................... 2

Cal. Civ. Proc. Code § 1021.6 ................................................................................... 2

Cal. Health & Safety Code § 25363(e) .................................................................... 16

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 12(b)(6) .................................................................................... passim

Fed. R. Civ. P. 12(f) ......................................................................... 1, 18, 19, 20

Fed. R. Civ. P. 41(b) ................................................................................... 1, 3, 20

**INTRODUCTION**

On February 23, 2010, this Court issued its Order Granting Motions to Dismiss with Leave to Amend ("Order"), granting the motions of defendant Ford Motor Company ("Ford Motor") and others to dismiss the original complaint ("OC") filed in this case by Chubb Custom Insurance Company ("Chubb"). The Order gave Chubb thirty days leave to amend its complaint "in a manner consistent with this order." Chubb has now filed its first amended complaint ("FAC"). Chubb continues to allege that it is entitled to recover response costs on behalf of its insured, the Taube-Koret Campus for Jewish Life ("Taube-Koret"), pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 et seq., and various provisions of California state law. Chubb has clarified, however, that its own alleged costs consist only of payments made under the terms of Taube-Koret's liability insurance policy.

Chubb has no right to recover those payments under CERCLA. They do not constitute recoverable response costs under CERCLA Section 107(a), 42 U.S.C. § 9607(a). Nor does Chubb have a right of subrogation under CERCLA Section 112(c), 42 U.S.C. § 9612(c). Chubb's CERCLA cause of action still fails to state a claim upon which relief may be granted. It therefore must be dismissed in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"). Moreover, because Chubb has alleged no other federal cause of action, Chubb's state law claims also should be dismissed for lack of jurisdiction. That would be true even if the claims had some merit on their own. They do not. Chubb has failed to allege facts sufficient to establish any of these claims. Consequently, each and every cause of action, both federal and state, should be dismissed.

Dismissal this time should be with prejudice. The Order described in detail how Chubb could amend its complaint to survive a motion under FRCP 12(b)(6). Chubb has failed to comply with the Order's explicit guidance, and it would be futile to allow Chubb to amend the complaint any further. Moreover, because the allegations in the amended complaint are not "consistent with" the Order, Chubb has subjected itself to dismissal with prejudice under FRCP 12(b)(6) and FRCP 41(b).

The Court also should strike certain allegations concerning Ford Motor's purported indemnity agreements and remedial activities as immaterial and impertinent under FRCP 12(f). Finally, the Court should strike Chubb's demand for a jury trial, since Chubb is not entitled to one.

1

## BACKGROUND

Chubb brought this action on September 23, 2009, to recover "in excess of $2.4 million dollars ($2,400,000) for costs incurred . . . in response to releases and/or threatened releases of hazardous substances" at a 47-acre site located in Palo Alto, California (the "Site").  (OC ¶¶ 3, 9; FAC ¶¶ 3, 9.)  In 2002, Taube-Koret acquired a 12-acre parcel located within the Site from Defendant Sun Microsystems, Inc. ("Sun").  (OC ¶ 18; FAC ¶ 13.)  Chubb also issued its insurance policy (the "Policy") to Taube-Koret in 2002.  (OC  ¶¶ 21, 46; FAC ¶ 17; OC, FAC Ex. A.)  Taube-Koret later subdivided its 12-acre parcel and retained one parcel ("Parcel 2"), consisting of approximately 8-acres.  (OC ¶ 18; FAC ¶ 13.)  It allegedly also made claims under the Policy "for costs and attorneys fees incurred in connection with the investigation and clean up of Site related hazardous substances on and around Parcel 2, in compliance with . . . RWQCB [California Regional Water Quality Control Board] Orders (which incorporated orders by the California Department of Toxic Substances Control ("DTSC")."  (FAC ¶ 18.)[1]

Chubb originally alleged nine substantive causes of action against Space Systems/Loral, Inc. ("SS/L"); Ford Motor; Chevron Corporation ("Chevron"); Sun; and Harman Stevenson Inc. ("Stevenson").  Four were brought under federal law and sought: recovery of response costs under CERCLA Section 107(a) (OC ¶¶ 24-33); subrogation under CERCLA Section 112(c) (OC ¶¶ 34-38); contribution under CERCLA Section 113(f) (OC ¶¶ 39-40); and declaratory relief under CERCLA Section 113(g)(2) and 42 U.S.C. § 2201 (OC ¶¶ 68-73).  The remainder were brought under California law and sought: contractual subrogation (OC ¶¶ 45-58); equitable subrogation (OC ¶¶ 59-67); statutory indemnity (OC ¶¶ 74-77,  ¶¶ 78-80); and equitable indemnity (OC ¶¶ 81-84).[2]

The Court granted separate motions by Ford, Chevron, Sun and Stevenson to dismiss the

---

[1] Chubb initially alleged that it had paid "in excess of $2.4 million dollars ($2,400,000) for costs incurred to date . . . and expects to pay additional response costs in the future."  (OC ¶ 9; *compare* OC ¶ 23 ("Chubb made payments . . . in an amount in excess of $2,400,000 ('Chubb's Payment'), for [response] costs and defense costs incurred and to be incurred in connection with the investigation, defense, and clean up of hazardous substances.").)  Chubb appears to have dropped any claim for future costs in the amended complaint.

[2] In addition to these causes of action, Chubb also sought declaratory relief under state law (OC ¶¶ 85-89) and attorneys' fees under Cal. Civ. Proc. Code §§ 1021.1 and 1021.6 (OC ¶ 90-99).

1   original complaint pursuant to FRCP 12(b)(6). Chubb filed its amended complaint on March 25,

2   2010. Chubb subsequently agreed by stipulation to allow Ford Motor until May 3, 2010 to answer

3   or otherwise respond to the amended complaint.

## STANDARD OF REVIEW

5       This Court has acknowledged that the standards for review of a complaint under FRCP

6   12(b)(6) are those stated by the U.S. Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554

7   (2007) and *Ashcroft v. Iqbal*, 556 U.S. –, 129 S. Ct. 1937 (2009). Thus, "'[w]hile a complaint

8   attacked by a rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's

9   obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

10  conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" (Order at 3

11  (quoting *Twombly*, 550 U.S. at 555; *Clegg v. Cult Awareness Network*, 18 F.3d 752 754-755 (9th

12  Cir. 1994)).) "'[W]here the well-pleaded facts do not permit the court to infer more than the mere

13  possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is

14  entitled to relief.'" (Order at 3 (quoting *Iqbal*, 129 S. Ct. at 1950).) Moreover, a court "'may

15  disregard allegations in the complaint if contradicted by facts established by exhibits attached to the

16  complaint.'" (Order at 3-4 (quoting *Sumner Peck Ranch v. Bureau of Reclamation*, 823 F. Supp.

17  715, 720 (E.D. Cal. 1993); *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987)).)

18      A plaintiff must be granted leave to amend a complaint found deficient under FRCP 12(b)(6),

19  "unless it is clear that the complaint's deficiencies cannot be cured by amendment." (Order at 4

20  (citing *Lucas v. Dep't of Corrs.*, 66 F.3d 245, 248 (9th Cir. 1995)).) "When amendment would be

21  futile, however, dismissal may be ordered with prejudice." (Order at 4 (citing *Dumas v. Kipp*, 90

22  F.3d 386, 393 (9th Cir. 1996)).) In addition, when a defendant moves to dismiss an action after the

23  failure of a plaintiff to comply with a court order, dismissal operates as an adjudication on the merits

24  unless the dismissal order states otherwise. FRCP 41(b).

## ARGUMENT

**I.   CHUBB'S CERCLA CAUSE OF ACTION FAILS TO STATE A CLAIM
      ON WHICH RELIEF MAY BE GRANTED UNDER FRCP 12(B)(6)**

In its amended complaint, Chubb asserts only a single CERCLA cause of action, pursuant to

3

CERCLA §§ 107(a) and 112(c), 42 U.S.C. §§ 9607(a) and 6912(c).  Chubb fails to state a claim under either of those provisions, and its CERCLA cause of action should therefore be dismissed.

### A.   Chubb has Failed to Establish Standing to Recover Costs Under CERCLA § 107(a)

In dismissing the original complaint, the Court found that Chubb lacked standing to recover its payments to Taube-Koret as response costs under CERCLA § 107(a). (Order at 9 (citing *Cal. Department of Toxic Substances v. City of Chico*, 297 F. Supp. 2d 1227 (E.D. Cal. 2004); *Am. Int'l Spec. Lines Ins. Co. v. United States*, 2005 WL 680159 (N.D. Cal. Mar. 24, 2005).)  The Court noted that the court in *City of Chico* also dismissed a Section 107 claim by an insurance company to recover payments made to an insured, because "[the insurer] has not incurred any response costs; rather, it has indemnified [the insured] for [the insured's] response costs."  297 F. Supp. 2d at 1232. At no point did Chubb "explain why its Section 107 claim for cost recovery should not suffer the same fate as the insurance company's in *City of Chico*."  (Order at 9.)  Moreover, "[u]ntil Chubb can establish that it has standing to bring a Section 107(a) claim, the Court need not determine if the requisite elements of the claim have been pled adequately."  *Id.*

Chubb has alleged no additional facts to show that it has standing to bring a Section 107(a) claim.  Indeed, Chubb now concedes that the only costs it seeks to recover are "response costs incurred by Taube-Koret Campus for Jewish Life ("TKCJL") . . . ." (FAC ¶ 3.)  Ford Motor has pointed out previously that CERCLA § 107(a) allows a private party to recover only its own response costs, not costs incurred by someone else.  (*See* Ford Motor's Mem. Supp. Mot. to Dismiss (Nov. 5, 2009) ("Ford Motor MTD") 6:3-23 (citing *United States v. Atlantic Research Corp.*, 551 U.S. 128, 139 (2007); *see also City of Chico*, 297 F. Supp. 2d at 1232).)  To the extent it is based on Section 107(a), Chubb's CERCLA cause of action is still subject to dismissal on standing grounds.

### B.   Chubb has Failed to Allege Facts Sufficient to Establish a Claim for Subrogation Under CERCLA § 112(c)

Again citing *City of Chico* and *Am. Int'l Spec. Lines*, the Court dismissed Chubb's original CERCLA § 112(c) subrogation claim on ripeness grounds, because Chubb failed to establish that Taube-Koret had been made whole by Chubb's insurance payments.  (Order at 9-10.)  The Court

4

1   indicated it would allow Chubb to amend the complaint "if the facts are otherwise," but it made clear

2   that "Chubb should plead with sufficient particularity the circumstances surrounding the

3   compensation it has paid on behalf of Taube-Koret and the 'rights, claims, and causes of action'

4   belonging to Taube-Koret for which it is seeking subrogation under [CERCLA] Section 112(c)."  *Id.*

5         Chubb has now alleged that Taube-Koret "has been fully compensated and has been made

6   whole."  (FAC ¶ 18.)  Moreover, Chubb no longer asserts a separate cause of action for declaratory

7   relief to address liability for alleged future costs pursuant to CERCLA Section 113(g)(2), 42 U.S.C.

8   § 9613(g)(2), and 28 U.S.C. § 2201.[3]  It remains to be determined whether Chubb has now pled

9   "with sufficient particularity" the circumstances surrounding its payments and the "rights, claims,

10   and causes of action" for which Chubb is seeking subrogation under CERCLA Section 112(c).

11   Upon scrutiny, it is clear that it has not.

### C.   Chubb has not Alleged Facts Sufficient to Show that Chubb has Paid "Compensation Under This Act" Subject to CERCLA § 112(c)

14         CERCLA § 112(c) gives a statutory right of subrogation only to persons who pay

15   "compensation pursuant to this Act," i.e., persons who pay pursuant to CERCLA.  42 U.S.C. §

16   9612(c).  An example would be an insurance company that settles and pays, on behalf of a

17   potentially responsible party ("PRP") with an insurance policy, claims made by the government in

18   an action brought against the PRP under CERCLA Sections 106 or 107(a).  In that case, the

19   insurance company may have a right of subrogation under CERCLA § 112(c), to pursue the "rights,

20   claims, and causes of action" its insured may have against other PRPs, because the company would

21   have paid compensation to the government "pursuant to" CERCLA.   Chubb has not alleged in this

22   case, however, that it has paid claims made by the government in a CERCLA Section 106 or 107(a)

23   action.

---

[3]Chubb sought declaratory relief in its original complaint, on grounds that "[s]ubstantial costs will be incurred by Chubb over time and at the conclusion of this action," and that unless declaratory relief is granted, "it will be necessary for Chubb to commence many successive actions . . . to secure compensation for the cost incurred and damages sustained," in the future.  (OC ¶ 71.)  Despite its decision not to seek recovery of future costs or assert a cause of action for declaratory relief in its amended complaint, it should be noted that Chubb continues to pray for a judgment "that Defendants are jointly and severally liable . . . for response costs paid by Chubb . . . in an amount in excess of $2,400,000."  (FAC Prayer for Relief (ii).)

1    In *Am. Int'l Spec. Lines*, DTSC ordered the insurance company plaintiff to "assess and

2    remediate" pesticide contamination at a former military facility.  2005 WL 680159, at *1.  The

3    company claimed that to comply with the order, it (as opposed to its insured) had "incurred

4    substantial costs in connection with its necessary response to the release or threatened release of

5    hazardous substances discovered at the Property."  *Id*.  The company thereafter filed a CERCLA

6    action against the United States and the U.S. Navy as PRPs, seeking a declaration of joint and

7    several liability as well as contribution under CERCLA § 113.  *Id*.  Citing the *City of Chico* case, the

8    Court found that while the company could not otherwise obtain relief under CERCLA, it could

9    recover its response costs through a subrogation action pursuant to CERCLA § 112(c)(2).  *Id*. at *4.

10   The facts are different in the present case.  Chubb now concedes that it has paid Taube-Koret

11   compensation only *pursuant to the terms of the Policy*.  Unlike the plaintiff in *Am. Int'l Spec. Lines*,

12   Chubb has not alleged that it paid any environmental response costs of its own.

13        Chubb simply has not alleged anywhere that it paid compensation to anyone "pursuant to"

14   CERCLA.  It only has alleged that it paid compensation to Taube-Koret pursuant to the Policy, and

15   the Policy obligates Chubb to pay money subject to terms that have nothing to do with CERCLA.[4]

16   The Policy broadly allows payment of any "loss" that Taube-Koret becomes legally obligated to pay

17   as a result of a claim for "bodily injury, property damage or remediation costs,"[5] resulting from a

18   

---

19   [4] A copy of the Policy is attached as Exhibit A to Chubb's complaint.  (FAC ¶ 17.)  The Policy was
       issued for a period from June 21, 2002 to June 21, 2012.  *Id*.; (FAC Ex. A, Declarations Page 1
20     (Item 2. Policy Period).)  The "Insured Site" originally was limited to "901 San Antonio Road,
       Palo Alto, CA 94303," although it later was expanded to include 851 San Antonio Road.  (FAC
21     Ex. A, Declarations Page 1 (Item 5. Insured Site(s) and Address(es)); FAC Ex. A, Schedule of
       Insured Site(s) Endorsement Form 70-02-0562 (Ed. 11-2), dated April 27, 2005.)  The Policy
22     Premium was $153,259.  (FAC Ex. A, Declarations Page 2 (Item 9. Policy Premium).)  That was
       increased by $37,966 in consideration of the addition of 851 San Antonio Road as an "Insured
23     Site."  (FAC Ex. A, Endorsement Forms 70-02-0541 (Ed. 12-01), dated April 27, 2005.)

24   [5] For purposes of the Policy, "loss" means any (1) "monetary awards or settlements of compensatory
       damages; civil fines, penalties, and assessments; and where allowable by law, exemplary or
25     multiple damages," (2) "legal expenses," (3) "remediation costs," (4) "diminution in value," and
       (5) "emergency response."  (FAC Ex. A, Endorsement Form 70-02-0521 (Ed. 5-01).)
26     "Remediation costs" includes "restoration costs," and legal expense incurred with Chubb's
       consent.  (FAC Ex. A, Contract Page 10.)  "Restoration costs" mean costs to "restore, repair or
27     replace real or personal property to substantially the same condition it was in prior to being
       damaged during work performed in the course of incurring remediation costs."  (FAC Ex. A,
28     Contract Page 11.)

1   "pollution incident."[6]  (FAC Ex. A, Contract Page 1, as modified by Endorsement Forms 70-02-0521

2   (Ed. 5-01) and 70-02-0541 (Ed. 12-01), dated August 23, 2002.)  The coverage provisions of the

3   Policy do not even mention CERCLA, much less restrict themselves to payments made "pursuant

4   to" the statute.

5           Other than stating that Taube-Koret made claims for response costs and attorney fees

6   pursuant to the Policy and that Chubb paid those claims (FAC ¶¶ 17-18, 72), Chubb says nothing

7   about the circumstances surrounding its payments to Taube-Koret.  Chubb does not say when Taube-

8   Koret tendered its claims or whether it did so in accordance with the administrative requirements of

9   the Policy.  (*See, e.g.*, FAC Ex. A, Contract Pages 3-4 Section II (Duties of the Insured in the Event

10  of a Claim, Pollution Incident or Business Interruption).)  Nor does it say whether Taube-Koret's

11  claims related only to environmental response costs or covered other elements of "loss," such as civil

12  fines, penalties, and assessments, diminution in value, and property restoration costs.[7]

13          Because it has not alleged it paid compensation pursuant to CERCLA, Chubb has failed to

14  state a claim for subrogation under Section 112(c)(2).  Indeed, by failing to plead with "sufficient

15  particularity the circumstances surrounding the compensation it has paid on behalf of Taube-Koret,"

16  Chubb has violated the Court's requirement to amend the complaint "consistent with" its Order.

17          **D.    Chubb has not Pled the Existence of "Rights, Claims or Causes of Action"**

18              **Against Ford Motor for Purposes of CERCLA § 112(c)**

19          Even if it pled a viable CERCLA § 112(c) claim, Chubb could not pursue that claim against

20  Ford Motor.  Chubb has failed to allege facts to show that Taube-Koret has any "right, claim or

21

22  [6]"Pollution incident" also is a defined term under the Policy.  (FAC Ex. A, Contract Page 1.)  The
        Policy was modified to exclude a specific "pollution incident" associated with a former
23      underground storage tank or tanks ("UST(s)") and product lines at 851 San Antonio Road.  (FAC
        Ex. A Endorsement Form 70-02-0564 (Ed. 11-02), dated December 28, 20904; *see also* FAC ¶  9.)

24  [7]Certain allegations in Chubb's amended complaint suggest that costs Taube-Koret claimed as
        response costs were instead ordinary expenses that any developer might incur to redevelop a
25      former industrial site for residential use.  (*See, e.g.*, FAC ¶¶ 134-136 (describing a Human Health
        Risk Assessment ("HHRA") that contained a "development-specific risk assessment"), ¶ 137
26      (describing how the HHRA included an analysis of estimates of exposure to volatile organic
        compounds ("VOCs") possibly entering on-Site structures and accumulating in indoor air), ¶ 138
27      (discussing how the HHRA addressed risks to potential on-Site residents), and ¶ 139 (discussing
        the effect of using engineering and institutional controls in proposed redevelopment at the Site).)

28

7

1   cause of action" against Ford Motor that could serve as the basis for a federal subrogation claim.

2   Ford Motor made the same argument in moving to dismiss Chubb's original complaint.  (*See* Ford

3   Motor MTD 7:19-28 and 8:1-6.)  In its Order, however, the Court said that "[b]ecause the allegations

4   of the current complaint fail to establish that the claim is ripe, the Court need not reach this issue."

5   (Order at 10.)

6           Assuming *arguendo* that Chubb has now cured its ripeness problem, the question of Ford

7   Motor's liability can no longer be deferred.  As discussed below, Ford Motor cannot be held liable as

8   a responsible party under CERCLA § 107(a).  Nor can it be held liable under any other provision of

9   law.  Chubb has failed to allege facts sufficient to show that Taube-Koret has a right, claim, or cause

10  of action against Ford Motor.  Consequently, this Court can and should now determine that Chubb's

11  claims against Ford Motor are entirely without merit.

12                  **1.      Chubb has not Established that Ford Motor is Liable as**

13                  **an Owner or Operator Under CERCLA § 107(a)(1)**

14          Chubb cannot recover against Ford Motor directly as an owner or operator under CERCLA

15  § 107(a).  CERCLA imposes liability on "any person who at the time of disposal of any hazardous

16  substance owned or operated any facility."  42 U.S.C. § 9607(a)(2).  Chubb continues to allege only

17  that Ford Aerospace Company Corporation ("Ford Aerospace"), not Ford Motor, "owned and

18  operated" a facility at the Site.  (FAC ¶¶ 26, 28-29, 36.)  Moreover, Chubb admits that Ford

19  Aerospace was a wholly owned subsidiary of Ford Motor, and therefore a separate legal entity from

20  Ford Motor.  (FAC ¶ 27.)  Chubb nowhere alleges that Ford Motor owned or operated any facility on

21  Parcel 2, other than its conclusory allegation that "Defendants" are jointly and severally liable under

22  CERCLA as "owners and operators of facilities . . . ."  (FAC ¶ 76.)

23          The Supreme Court addressed the liability of a parent corporation for the acts of a subsidiary

24  under CERCLA in *United States v. Bestfoods*.  524 U.S. 51 (1998).  In *Bestfoods*, the Court held that

25  a parent can be held liable under CERCLA only where:  (1) facts exist that would justify piercing the

26  corporate veil; or (2) the parent actively participated in, and exercised control over, the operations of

27  the facility itself such that it can be deemed an operator.  *Id*. at 55; *see also Doe v. Unocal

28  Corporation*, 248 F.3d 915, 926 (9th Cir. 2001) ("To demonstrate that the parent and subsidiary are

1   not really separate entities and satisfy the alter ego exception to the general rule that a subsidiary and

2   the parent are separate entities, the plaintiff must make out a prima facie case (1) that there is such

3   unity of interest and ownership that the separate personalities of the two entities no longer exist and

4   (2) that failure to disregard their separate identities would result in fraud or injustice.")  In this case,

5   Chubb does not even allege that Ford's corporate veil should be pierced, much less set forth facts to

6   support such a claim.[8]

7           Nor does it allege facts sufficient to show that Ford Motor is liable directly as an operator

8   under CERCLA.  The Court in *Bestfoods* held that in order to be an "operator," the parent must

9   "manage, direct, or conduct operations specifically related to pollution, that is, operations having to

10  do with the leakage or disposal of hazardous waste, or decisions about compliance with

11  environmental regulations."  *Bestfoods*, 524 U.S. at 66–67.  Here the inquiry focuses on "whether, in

12  degree and detail, actions directed to the facility by an agent of the parent alone are eccentric under

13  accepted norms of parental oversight of a subsidiary's facility."  *Id.* at 72.

14          The only "facts" that Chubb alleges to support a claim of direct operator liability are that

15  Ford Motor provided "guidance and direction with respect to environmental regulatory matters,

16  complying with environmental regulations, and responding to State and Federal environmental

17  agencies," and that Ford required communications regarding environmental issues be sent to Ford

18  Motor's Office of General Counsel.  (FAC ¶ 52-53.)  These allegations do nothing to demonstrate

19  that Ford acted in a manner "eccentric under accepted norms of parental oversight of a subsidiary's

20  facility."  *Bestfoods*, 524 U.S. at 72.  Articulation of general policies and procedures do not give rise

21  to direct operator liability under CERCLA.  *Id.*

22

23

24  [8]Chubb merely recites legal elements and conclusions regarding Ford's relationship with Ford
    Aerospace.  Chubb alleges that Ford Motor "exercised actual management and control over the

25  operation of Ford Aerospace as it pertained to the maintenance, use, handling, storage, transport
    and / or disposal of hazardous substances, as well as Ford Aerospace's compliance with

26  environmental laws."  (FAC ¶ 51.)  It further alleges that Ford Motor "actively participated in the
    management of Ford Aerospace and its facility by managing and directing the maintenance, use,

27  handling, storage, transport and / or disposal of hazardous waste."  *Id.*  These are precisely the sort
    of "legal elements and legal conclusions" that the Court in *Twombly* held are insufficient to

28  withstand a motion to dismiss.  *See Twombly*, 550 U.S. at 563.

### 2. Chubb has not Established that Ford Motor is Liable as an Arranger Under CERCLA § 107(a)(3)

In addition to operator liability under CERCLA § 107(a)(1), Chubb alleges that Ford Motor is liable as a "generator" of hazardous substances under CERCLA § 107(a)(3), 42 U.S.C. § 9607(a)(3).  (FAC ¶ 85.)  Chubb alleges (on information and belief) that "on behalf of Ford Aerospace and SS/L, and between 1987 to 2008, Ford Motor contracted, agreed, or otherwise arranged for the treatment or disposal, transportation for treatment or disposal of hazardous substances that caused the contamination which came to be located on the Site, and was otherwise released to the environment."  (FAC ¶ 84.)  Chubb also alleges that "[b]y operation of indemnity, and/or an agreement to indemnify, Ford Motor is responsible for the environmental contamination created by Ford Aerospace and SS/L."  (FAC ¶ 87.)  Chubb has no standing to assert that Ford Motor is liable to Chubb or Taube-Koret under any purported indemnity or agreement.  Nor has Chubb asserted facts sufficient to show that Ford Motor can independently be held liable under Section 107(a)(3) or any other provision of law.

### A) Ford Motor Cannot be Held Liable Pursuant to Any Purported Indemnity Agreement with Ford Aerospace or SS/L

Chubb alleges (on information and belief) that "by written agreement, Ford Motor assumed responsibility from Loral Aerospace Holdings, Inc. and SS/L for compliance with RWQBC Order No. 89-137, and successive orders, which named Ford Aerospace a discharger and ordered Ford Aerospace to cleanup certain hazardous substances which polluted the Site."  (FAC ¶ 20; *see also* FAC ¶ 44 ("[b]y private agreement with Loral, Ford Motor assumed responsibility for compliance with RWQCB Order No. 89-137").)  Chubb nowhere alleges that Chubb or Taube-Koret were parties to any indemnity agreements, or that such agreements were executed by Ford Motor in favor of Chubb or Taube-Koret.

In order for a third party to succeed on a claim for contractual indemnification, it must be a third party beneficiary of the contract.  *Edge Management Consulting, Inc. v. Blank*, 807 N.Y.S.2d

353, 358 (N.Y. App. Div. 2006).[9]  The party seeking to recover as a third party beneficiary must establish:  (1) that a valid and binding contract exists between other parties; (2) that the contract was intended for his or her benefit; and (3) that the benefit was direct rather than incidental.  *Id.*  Chubb does not assert it is a third party beneficiary to any contract and makes no attempt to demonstrate it is otherwise entitled to indemnification by Ford Motor.

As strangers to any contract, neither Chubb nor Taube-Koret has standing to sue for enforcement of its provisions or for declaratory relief.  *Arrow Louver and Damper Division of Arrow United Ind. Inc. v. New York City Transit Authority*, 482 N.Y.S.2d 844 (N.Y. App. Div. 1984).  To have standing, a party must show it has suffered an injury in fact.  *Table Bluff Reservation v. Philip Morris, et al.*, 256 F.3d 879, 882 (9th Cir. 2000) (citation omitted).  Specifically, the plaintiff must show an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual and imminent, not conjectural or hypothetical.  *Id*.  Chubb has alleged no facts to establish that either it or Taube-Koret has a "legally protected interest" with respect to any private agreement between Ford and Loral or SS/L.

### B)    Ford Motor has not Otherwise Engaged in Activities Creating Liability Under be CERCLA § 107(a)(3)

Nor can Ford Motor be held directly liable as a generator (arranger) under CERCLA Section 107(a)(3).  That provision imposes liability on "any person who . . . arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances . . . ."  42 U.S.C. § 9607(a)(3).  The "issues involved in determining 'arranger' liability are distinct from those involved in determining 'owner' or 'operator' liability."  *Coeur D'Alene Tribe v. Asarco, Inc.*, 280 F. Supp. 2d 1094, 1130–31 (D. Idaho 2003) (citation omitted).  Indeed, "arranger liability requires active involvement in the arrangements of disposal of hazardous substances."  *Id*. at 1131 (citations omitted).  "Arranger liability requires a person to: (1) own or possess waste and arrange for its disposal; or (2) have the authority to control and to exercise some

---

[9]Any alleged agreement between Ford and SS/L that Chubb attempts to rely upon is likely to be governed by New York law.  However, California law similarly provides that a stranger to a contract has no standing to assert any rights, unless it is a third party beneficiary as demonstrated by the express intent of the parties to the contract.  *Infinet Marketing Services, Inc. v. American Motorist Insurance Company*, 150 Cal. App. 4th 168, 180–81 (2007).

11

1  actual control over the disposal of waste." *Basic Mgmt. v. United States*, 569 F. Supp. 2d 1106, 1116

2  (D. Nev. 2008) (citing *Coeur D'Alene Tribe*, 280 F. Supp. 2d at 1132).

3        Chubb alleges that "[a]s a result of Ford Motor's release of hazardous substances on the Site

4  and failure to perform the necessary environmental remediation, TKCJL was forced to incur

5  response costs consistent with" the national contingency plan, or "NCP."  (FAC ¶ 86.)  It is entirely

6  unclear what Chubb is referring to here.  Earlier in the Complaint, Chubb alleges that

7
8
9
10
11

> Ford Aerospace and/or Ford Motor installed, which Ford Motor
> continues to maintain, a dewatering system located under Building 5
> (3825 Fabian Way) which extracted and continues to extract
> groundwater at an average rate of 70 gallons per minute ("gpm") or
> 100,800 gallons per day ("gpd") . . . .  The operation of the dewatering
> system continues to influence on- and off-site contaminated
> groundwater contamination plumes through portions of the Site
> causing further VOC contamination to migrate throughout the Site.

12  (FAC ¶ 35.)  Nothing in this allegation supports a claim that Ford Motor either (1) owned or

13  possessed hazardous waste and arranged for its disposal at the Site or (2) had authority to control and

14  to exercise some actual control over the disposal of waste, as required under CERCLA § 107(a)(3).

15        Indeed, all of Chubb's other factual allegations demonstrate that the only thing Ford Motor

16  ever did at the Site was attempt to clean it up:

17  -  "Between April and May 1987, Ford Motor caused to be installed eight (8) groundwater
18     monitoring wells on the Site, and two (2) wells in the vicinity of Buildings 7 and 8."  FAC
       ¶ 48.

19  -  "In 1995, Ford Motor excavated and treated approximately 6,000 cubic yards of soil
20     containing VOCs near and around Buildings 7 and 8."  FAC ¶ 49.

21  -  "In addition to the dewatering facility erected under Building 5 . . . Ford Motor installed and
       utilized a groundwater extraction well located near the northwest corner of the Site, which
22     began extracting groundwater at a rate of up to 20 GPM or 28,800 gpd.  The groundwater
       extraction operated until approximately September 2001."    FAC ¶ 50.

23       The complaint is devoid of allegations that Ford Motor arranged for the disposal of its own or

24  anyone else's hazardous waste at the Site.  Ford Motor cannot be held liable as an "arranger" under

25  CERCLA § 107(a)(3), any more than it can be held liable as an "owner/operator" under CERCLA

26  § 107(a)(1).

27

28

1

2          **E.     Chubb's  CERCLA Claims are Barred under CERCLA § 113(g)**

3                 Chubb nowhere says when Taube-Koret made its alleged insurance claims or when Chubb

4          paid those claims. This deficiency is critical, since any or all of Chubb's causes of action could be

5          barred under applicable statutes of limitations.  For example, CERCLA § 113(g)(4) provides that

6          "[n]o action based on rights subrogated pursuant to this section [sic, presumably the "Act" or

7          CERCLA[10]] by reason of payment of a claim may be commenced under this title . . . more than 3

8          years after the date of payment of such claim." 42 U.S.C. § 9613(g)(4).  Under this section, Chubb's

9          CERCLA cause of action would be barred to the extent Chubb made payments prior to September

10         23, 2006, three years before Chubb filed its original complaint.  Because Chubb has failed to allege

11         when it paid money to Taube-Koret, it is impossible to know the extent to which CERCLA

12         § 113(g)(4) applies to Chubb's overall CERCLA claim.

13                Nor is it clear exactly when Taube-Koret allegedly incurred the response costs that underlie

14         Chubb's subrogation claim.  On August 12, 2003, the RWQCB allegedly named Taube-Koret as "a

15         discharger with respect to the Site . . . pursuant to [RWQCB] Order No. R2-2003-0071."  (FAC ¶

16         13.)  On or about April 28, 2006, Taube-Koret's consultants allegedly submitted a "feasibility study"

17         to the RWQCB, although it is not clear what the feasibility study said or purported to accomplish.

18         (FAC ¶ 14.)  Finally, Chubb alleges that "[b]etween February 2006 and June 2006, TKCJL's

19         environmental consultants submitted a Final Risk Management Plan ("RMP"), Site Cleanup Plan

20         ("SCP"), and Human Health Risk Assessment ("HHRA") to the RWQCB for the proposed

21         remediation of Parcel 2 and approval [sic]." (FAC ¶ 15.)  These activities all occurred before

22         September 23, 2006, and recovery of any associated costs would be barred under Section 113(g)(4).

23                In addition, CERCLA § 113(g)(2)(A) provides that an action to recover response costs

24         incurred in connection with a "removal" action must be brought within 3 years after completion of

25         the removal.  42 U.S.C. § 9613(g)(2)(A).  Thus, Section 113(g)(2)(A) would bar recovery for

26         removal actions completed by Taube-Koret prior to September 23, 2006.  Chubb has alleged that at

27         ───────────────────
           [10]CERCLA § 113(g) does not provide for subrogation of claims for which an action may be brought
28              under CERCLA.  Actions for subrogation must be brought pursuant to CERCLA § 112(c).

1   least some of Taube-Koret's response costs related to the performance of removal actions under

2   CERCLA.  (*See, e.g.*, FAC ¶ 74 ("TKCJL incurred costs related to . . . (1) a removal site evaluation

3   (40 C.F.R. § 300.410); [and] (2) TKCJL's compliance with the removal action (40 C.F.R.

4   § 300.415) . . . .").)[11]

5

6   ## II.   CHUBB'S STATE LAW CLAIMS SHOULD BE DISMISSED BOTH
         FOR LACK OF JURISDICTION AND ON THEIR MERITS

7          Federal courts may exercise supplemental jurisdiction over state-law claims "that are so

8   related to claims in the action within [the court's] original jurisdiction that they form part of the

9   same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).

10  However, as this Court noted in the Order,

11                a court may decline to exercise supplemental jurisdiction where it "has
               dismissed all claims over which it has original jurisdiction," *id.* §
12             1367(c)(3).  Indeed, unless "consideration of judicial economy,
               convenience[,] and fairness to litigants" weigh in favor of the exercise
13             of supplemental jurisdiction, "a federal court should hesitate to
               exercise jurisdiction over state claims."
14

15  (Order at 8 (citations omitted).)

16          For the reasons discussed above, Chubb's CERCLA claim should be dismissed under FRCP

17  12(b)(6).  Exercising supplemental jurisdiction over Chubb's state law claims would not promote

18  any values of judicial economy, convenience, fairness, and comity.  No justification exists for

19  retaining supplemental jurisdiction over those claims, although even were that not the case, the Court

20  could still dismiss Chubb's state law claims as without substantive merit.

21

22

23  ───────────────

[11]Chubb's CERCLA cause of action also may be barred in part by CERCLA § 113(g)(2)(B), which
24     provides that any action to recover response costs incurred in connection with a "remedial" action
       must be brought "within 6 years after initiation of physical on-site construction of the remedial
25     action, except that, if the remedial action is initiated within 3 years after the completion of the
       removal action, costs incurred in the removal action may be recovered in the cost recovery action
26     brought under this subparagraph." 42 U.S.C. § 9613(g)(2)(B).  Chubb has alleged that Taube-
       Koret incurred and claimed response costs related to the performance of remedial actions under
27     CERCLA.  *See, e.g.,* FAC ¶ 74 ("TKCJL incurred costs related to . . . (3) a remedial site evaluation
       (40 C.F.R. § 300.420); (4) a remedial investigation and feasibility study (40 C.F.R. § 300.430);
28     [and] (5) remedial action operation and maintenance (40 C.F.R. § 300.435). . . .").

14

1

2

### A.  Chubb's Contractual and Equitable Subrogation Causes of Action do not State Independent Claims

3
The Court dismissed Chubb's original contractual and equitable subrogation claims on

4
ripeness grounds.  (Order at 11-12.)  The Court also noted as "well-taken" Ford Motor's arguments

5
that Chubb had not pled "'facts indicating [Taube-Koret] has incurred response costs or that Ford is

6
liable under CERCLA,' and that accordingly Chubb's subrogation rights under Section IV,

7
Paragraph 17 of its policy have not been triggered." *Id.*  The Court made clear that each of these

8
points would have to be addressed in any amended pleading.  *Id.*

9
Chubb's failure to allege facts showing Ford Motor's liability under CERCLA in the

10
amended complaint has already been discussed. *See supra* Part I.  Chubb also has not clarified the

11
nature of Taube-Koret's alleged response costs or why Chubb's subrogation rights have been

12
triggered.  Aside from retaining consultants to prepare a few planning and risk assessment

13
documents (*see* FAC ¶¶ 14-16, 132-139), Chubb never explains what Taube-Koret actually did to

14
respond to alleged releases of hazardous substances at the Site. The fact that the Policy provided for

15
the contractual transfer of rights under the Policy does not mean that Taube-Koret had such rights in

16
the first place.  Chubb has done nothing to cure the deficiencies of its original contractual

17
subrogation claim.

18
Nor has it cured similar deficiencies in its equitable subrogation claim.  Ford Motor already

19
has explained what an insurer seeking equitable subrogation must establish under California law.

20
(Ford Motor MTD 9:16-24 (citing *Fireman's Fund Ins. Co. v. Wilshire Film Ventures, Inc.*, 52 Cal.

21
App. 4th 553, 555–56 (1997)).)  For all the reasons discussed elsewhere in this Memorandum,

22
Chubb has still not pled facts sufficient to show (a) that Taube-Koret has suffered a loss for which

23
Ford Motor is liable, (b) that Chubb has compensated Taube-Koret for any loss for which Ford

24
Motor is liable, (c) that Taube-Koret has an existing, assignable cause of action against Ford Motor,

25
(d) that Taube-Koret suffered any damages caused by any act or omission by Ford Motor, or (e) that

26
justice would require any loss to be shifted from Chubb to Ford Motor.  Chubb's claim against Ford

27
Motor for equitable subrogation must be dismissed along with its claim for contractual subrogation.

28

15

### B.   Chubb's Statutory Indemnity Cause of Action Fails to State a Claim Under the California Health & Safety Code

In moving to dismiss the original complaint, Ford Motor sought dismissal of Chubb's claim for statutory indemnity under California Health and Safety Code Section 25363(e), based "on the same ground as many of its other motions – that Chubb has not established Ford Motor's liability or incurred costs under CERCLA." (Order at 12.)  The Court suggested in the Order, however, that "[w]hile Ford Motor's point is well taken with respect to the current pleading, Chubb may be able to plead additional facts sufficient to satisfy *Iqbal* and *Twombly* as to at least one CERCLA claim in an amended pleading." *Id*.  As discussed above, Chubb has not alleged additional facts to establish a CERCLA claim in its new complaint.  Chubb's claim in the amended complaint for statutory indemnity under state law should be dismissed for the same reasons it was the first time.

### C.   Chubb's Common Law Causes of Action Fail to State Claims for Relief to Which Chubb May be Entitled

Chubb has pled three new causes of action that were not in the original complaint, based on: trespass (FAC ¶¶ 142-149); nuisance (FAC ¶¶ 150-166); and strict liability (FAC ¶¶ 167-174).  None of these causes of action states a claim on which relief may be granted.  As Chubb has conceded, each of the claims are dependent on Chubb's status as a subrogee of a right, claim or cause of action that could be asserted by Taube-Koret.  (*See* FAC ¶¶ 149, 166, and 174.)  As discussed above, Chubb has failed to plead facts establishing a right of subrogation based on any right, claim or cause of action that Taube-Koret could assert against Ford Motor.  For that reason alone, each of Chubb's common law causes of action should be dismissed under FRCP 12(b)(6).

Even if they could be sustained, Chubb's common law causes of action would be barred under applicable statutes of limitation.  The period for "an action for trespass upon or injury to real property," including an action based on nuisance, is three years.  Cal. Civ. Proc. Code § 338(b).  It also is three years for an action based on strict liability.  *Id*.  Each of Chubb's common law claims, therefore, are barred to the extent they allege injuries occurring more than three years prior to Chubb's assertion of those claims, i.e., prior to March 25, 2007.

Chubb may argue that the three-year statute does not apply, because the injury alleged is a continuing one.  (FAC ¶ 161.)  A plaintiff seeking to maintain an action for damages after the three-

16

year statute of limitations has expired – on theory that the injury is "continuing" – must demonstrate that the underlying tort is capable of being *abated*. *Mangini v. Aerojet-General Corporation*, 12 Cal. 4th 1087, 1097 (1996). Moreover, the plaintiff must show that the cost of abatement would be *reasonable*. *Id.* at 1103. If the plaintiff fails to show that the injury can be abated at a reasonable cost, it is deemed "permanent," and the three-year statute again applies. *Id.* Chubb has not alleged facts to show that contamination at the Site is abatable or that the cost would be reasonable. Chubb alleges only that it is "informed and believes and thereon alleges that the nuisance described herein is and can be abated through proper remediation efforts, and therefore constitutes a continuing nuisance." (FAC ¶ 162.) Chubb nowhere explains what it means by "can be abated through proper remediation efforts." Chubb has failed to allege facts sufficient to establish its common law tort claims.

Chubb has alleged no facts to suggest that Taube-Koret incurred costs or suffered other damages after March 25, 2007. Chubb has alleged at most that Taube-Koret's consultants submitted a "feasibility study" to the RWQCB on or about April 28, 2006, and that "[b]etween February 2006 and June 2006, TKCJL's environmental consultants submitted a Final Risk Management Plan ("RMP"), Site Cleanup Plan ("SCP"), and Human Health Risk Assessment ("HHRA") to the RWQCB for the proposed remediation of Parcel 2 and approval [sic]." (FAC ¶¶ 14-15.) Absent any allegation that Taube-Koret incurred costs after March 25, 2007, Chubb's common law causes of action must be dismissed.

## III.   THE COURT SHOULD STRIKE ALLEGATIONS AND CLAIMS FOR RELIEF REGARDING FORD MOTOR UNDER FRCP 12(F)

FRCP 12(f) allows a court to strike "any redundant, immaterial, impertinent, or scandalous matter." "[T]he function of a Rule 12(f) motion is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994) (internal quotations omitted). "Scandalous pleadings are those that reflect cruelly upon the defendant's moral character, use repulsive language, or detract from the dignity of the court." *Mancini v. The Insurance Corporation of New York*, No. 07-1750, 2008 U.S. Dist. LEXIS 43954, at

17

*6 (S.D. Cal. May 29, 2008).

A.   **Chubb's Allegations Regarding Ford Motor's Contractual Obligations to Indemnify Any Party Should be Stricken as Irrelevant**

Chubb makes numerous allegations concerning private indemnity agreements between Ford Motor, Ford Aerospace and/or SS/L, under which Ford Motor allegedly engaged in response activities at the Site. The Court should strike these allegations pursuant to FRCP 12(f). They have "no essential or important relationship" to any plausible claim for relief, and they are not "necessary to the issues in question." *Fantasy*, 984 F.2d at 1527. Nor can they be preserved as historical background, because "[s]uperfluous historical allegations are proper subject of a motion to strike." *Id.* Specifically, Ford Motor moves to strike the following under FRCP 12(f):

–   "On information and belief, by written agreement, Ford Motor assumed responsibility from [SS/L] for compliance with RWQCB Order No. 89-137, and successive orders…" FAC ¶ 20;

–   "…Ford Motor has responded on behalf of SS/L on environmental matters related to site investigation and cleanup at the Site and to off-site affected properties." FAC ¶ 21;

–   "Ford Motor…[has] conducted numerous environmental contamination investigations of the Site since on or before March 1987." FAC ¶ 22;

–   "Ford Motor…initiated environmental soil and groundwater investigations on or about 1987." FAC ¶ 30;

–   "By 1989, it was known to Ford Motor…, that possible sources of environmental contamination at the facility included…" FAC ¶ 31;

–   "At the direction of Ford Motor…, in July 1986, three (3) USTs were removed from an area north of the former vehicle maintenance building." FAC ¶ 33;

–   "Chubb alleges that…Ford Motor installed, which Ford Motor continues to maintain, a dewatering system located under Building 5…" FAC ¶ 35;

–   "…since 1987, Ford Motor…[has] conducted a series of soil and groundwater investigations and remedial actions at the Ford Aerospace complex, which included the Site…Ford Motor has been aware that Ford Aerospace was a generator of hazardous substances…since on or before 1987." FAC ¶ 43;

–   "By private agreement with Loral, Ford Motor assumed responsibility for compliance with RWQCB Order No. 89-137. Since April 1991, Ford Motor has responded on behalf of SS/L on matters related to site investigation and cleanup at the Site and to off-site affected properties." FAC ¶ 44;

–   "…Ford Motor has agreed by express agreement, or conduct, to indemnify Ford Aerospace and SS/L of their respective environmental liabilities related to the Site. Despite having sold Ford Aerospace and all of its assets to Loral in 1990, Ford Motor has been the sole entity communicating with the RWQCB since April 1991, on matters related to site investigation and cleanup of the former Ford Aerospace site, and to off-site affected properties." FAC ¶ 45;

–   "…Ford Motor's purchase agreement regarding the sale of Ford Aerospace to Loral in 1990, included Ford Motor's assumption of certain responsibilities regarding Ford Aerospace,

18

1   which addressed the extent to which Ford Motor assumed responsibility for environmental
liabilities arising out of business previously conducted by Ford Aerospace, and by SS/L
2   going forward." FAC ¶ 46;

3   –   "Ford Motor continues to assume responsibility for the environmental pollution created by
Ford Aerospace at the subject Site. Between April and May 1987, Ford Motor caused to be
4   installed eight (8) groundwater monitoring wells on the Site, and two (2) wells in the vicinity
of Buildings 7 and 8. There are currently twelve (12) A zone groundwater monitoring wells
on the Site, installed on behalf of Ford Motor." FAC ¶ 48;

5   –   In 1995, Ford Motor excavated and treated approximately 6,000 cubic yards of soil
containing VOC's near and around Buildings 7 and 8. The excavation performed on behalf
6   of Ford Motor, failed to substantially remediate the subject Site." FAC ¶ 49;

7   –   In addition to the dewatering facility erected under Building 5, as described in paragraph 35
above, between 1998 and 2001, Ford installed and utilized a groundwater extraction well
8   located near the northwest corner of the Site…" FAC ¶ 50;

9   –   "…on behalf of Ford Aerospace and SS/L, and between 1987 to 2008, Ford Motor
contracted, agreed, or otherwise arranged for the treatment or disposal, transportation for
treatment or disposal of hazardous substances that caused the contamination which came to
10   be located on the Site…" FAC ¶ 84;

11   –   "By operation of indemnity, and/or an agreement to indemnify, Ford Motor is responsible for
the environmental contamination created by Ford Aerospace and SS/L." FAC ¶ 87;

12   –   "By operation of indemnity, and/or an agreement to indemnify, Ford Motor is further
responsible for the conduct of Ford Aerospace and SS/L." FAC ¶ 158; and

13   –   "…Ford Motor is strictly liable for the harm created by Ford Aerospace and SS/L, pursuant
to an agreement to indemnify Ford Aerospace and/or SS/L." FAC ¶ 172.

14

15   **B.   The Court Should Strike Chubb's Allegation Regarding Ford
Motor's Purported Use of Ford Aerospace Pension Funds**

16   Chubb alleges in its amended complaint, for no apparent reason, that "despite having sold

17   Ford Aerospace and all of its assets to Loral, Ford Motor was later allowed to withdraw about $100

18   million from the pension fund of Ford Aerospace, in exchange for undisclosed terms and as

19   additional consideration for the sale of Ford Aerospace." (FAC ¶ 47.) Not only is this allegation

20   immaterial and impertinent, it can only have been intended as a gratuitous attack on Ford Motor's

21   corporate ethical standards. As noted above, allegations that "reflect cruelly upon the defendant's

22   moral character, use repulsive language, or detract from the dignity of the court" are scandalous and

23   properly struck under FRCP 12(f). *Mancini,* 2008 U.S. Dist. LEXIS 43954, at *6.

24

25   **C.   Chubb's Prayer for Relief Should be Struck to the Extent It Seeks Recovery
of Future Costs or Relies on Any Purported Indemnity Agreement**

26   A motion under FRCP 12(f) may properly include a request to strike "any part of the prayer

27   for relief when the relief sought is not recoverable as a matter of law." *Rosales v. Citibank*, 133 F.

28   Supp. 2d 1177, 1180 (N.D. Cal. 2001); *see also Survivor Productions LLC v. Fox Broadcasting*

19

*Company*, Case No. 01-3234, 2001 U.S. Dist. LEXIS 25512, at *13–14 (C.D. Cal. 2001) (striking the plaintiff's prayer for relief after finding that the treble damages requested by the plaintiff were not available under the Copyright Act). Chubb continues to pray for a judgment "that Defendants are jointly and severally liable . . . for response costs paid by Chubb . . . in an amount in excess of $2,400,000." (FAC Prayer for Relief (ii).) Because Chubb now contends that Taube-Koret has been "made whole, and because Chubb is no longer asserting a cause of action to recover future response costs in excess of $2,400,000, the Court should strike that part of Chubb's prayer for relief. It also should strike the prayer for relief to the extent it is based on any agreement involving Ford Motor.

**IV.   CHUBB'S DEMAND FOR A JURY TRIAL SHOULD BE STRICKEN UNDER FRCP 12(F) AS WITHOUT A BASIS IN LAW**

Chubb has demanded that it have a "trial by jury as to all issues so triable." (FAC ¶ 33.) Chubb has no right to a jury trial of its CERCLA cause of action. *See Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1046 (C.D. Cal. 2002). Because Chubb's CERCLA claim is its only federal cause of action, and because the Court may dismiss the remaining causes of action for lack of federal jurisdiction, there exist no grounds to allow a jury trial. Chubb's demand for one should be stricken under FRCP 12(f).

**CONCLUSION**

Chubb's amended complaint should be dismissed with prejudice pursuant to FRCP 12(b)(6) and FRCP 41(b), and pursuant to FRCP 12(f), this Court should enter an order: (1) striking allegations relating to agreements pursuant to which Ford Motor conducted remediation at the Site; (2) striking any allegations relating to Ford Aerospace's pension fund; (3) striking the prayer for relief to the extent it relies on the existence of any indemnity agreement or claim for future costs; and (4) striking Chubb's demand for jury trial.

Dated: May 3, 2010                           SHOOK, HARDY AND BACON, L.L.P.

By:   _____/s/ Kevin T. Haroff_____

Attorneys for Defendant
FORD MOTOR COMPANY

20