**E-Filed 4/20/11**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHUBB CUSTOM INSURANCE COMPANY, for itself and as the subrogee of, and in the name of TAUBE-KORET CAMPUS FOR JEWISH LIFE,<br><br>Plaintiff,<br><br>v.<br><br>SPACE SYSTEMS/LORAL, INC., et al.,<br><br>Defendants. | Case No. 5:09-cv-04485 JF/PVT<br><br>**ORDER[1] GRANTING MOTIONS TO DISMISS**<br><br>[Docket Nos. 129, 131, 132, 133] |

Plaintiff Chubb Custom Insurance Company ("Chubb") brought the instant action pursuant to the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, as well as various state laws, seeking recovery of costs it incurred on behalf of one of its insureds, the Taube-Koret Campus for Jewish Life ("Taube-Koret"). Chubb alleges that Defendants are jointly and severally liable for these costs, which allegedly were incurred in response to releases or threatened releases of hazardous substances on

---

[1] This disposition is not designated for publication in the official reports.

Case No. 5:09-cv-04485 JF/PVT
ORDER GRANTING MOTIONS TO DISMISS
(JFLC3)

1  or near property Taube-Koret now owns.

2  Defendants Ford Motor Company ("Ford Motor"), Chevron Corporation ("Chevron"),
3  Sun Microsystems ("Sun"), and Harman Stevenson, Inc.[2] ("Stevenson") (collectively
4  "Defendants") move to dismiss Chubb's Third Amended Complaint ("TAC").  For the reasons
5  discussed below, the motions to dismiss will be granted, without leave to amend.

### I. BACKGROUND

**A.   The Original Site**

This action involves a forty-seven-acre site that includes properties located at 3825, 3963, and 3977 Fabian Way, and 901 San Antonio Road in Palo Alto, California.[3]  (TAC ¶ 14.) Chubb alleges that Defendant Ford Aerospace & Communications Corporation ("Ford Aerospace") (now known as Defendant Space Systems/Loral, Inc. ("SS/L")) owned and occupied all of the properties from approximately 1959 until 1990.  (TAC ¶ 15.)  According to the TAC, Ford Aerospace used the properties to manufacture satellites and satellite equipment. (*Id.*)  Chubb alleges that Ford Motor was the "controlling entity" of Ford Aerospace until the sale of the latter's assets to SS/L in 1990 and that Ford Motor agreed to retain the liabilities of Ford Aerospace as a condition of that sale.  (TAC ¶¶ 74(a), (b).)  It alleges further that SS/L currently occupies all of the properties at issue except for 901 San Antonio Road.  (TAC ¶ 67.) Chubb claims that Ford Motor installed a dewatering system beneath 3825 Fabian Way in the 1960s and continues to operate that system, which extracts groundwater "at an average rate of 70 gallons per minute . . . or 100,800 gallons per day . . . ."  (TAC ¶ 77.)  Ford Aerospace allegedly released hazardous substances at the site, (TAC ¶ 60), and the continuing operation of the dewatering system "influenced on- and off-site groundwater contamination plumes, which caused VOCs [volatile organic compounds] to migrate beneath the [s]ite . . . ," (TAC ¶ 77(d)). Chubb alleges that Ford Aerospace sold 901 San Antonio Road to Defendant Sun in 1988.  (TAC

---

[2]  Harman Stevenson Inc. has changed its name to Harman-Prudence, Inc., (Stevenson's MTD at 2 n.1), but the Court will continue to refer to it as Stevenson for present purposes.

[3]  As discussed below, Chubb alleges that the site eventually came to include the property located at 851 San Antonio Road, Palo Alto, California.

¶ 86.) Sun allegedly was aware of contamination when it sold this property to Taube-Koret in June 2002. (TAC ¶ 16.)

**B.     The Site Cleanup Orders**

On June 16, 1999, the California Regional Water Quality Control Board (the "Water Board") issued Order No. 99-043, "which required named dischargers to cleanup and abate the effects of hazardous substances found on certain portions of the [s]ite, namely, 3825, 3963 and 3977 Fabian Way and 901 San Antonio Road." (TAC ¶ 19.) On August 12, 2003, following Taube-Koret's acquisition of 901 San Antonio Road, the Water Board issued Order No. R2-2003-0071, which named Taube-Koret as a discharger of hazardous substances, and "based on its status as a current property owner, [Taube-Koret] became liable for complying with [Water Board] Order No. 99-043 . . . ." (TAC ¶ 20.)

Between January and June 2006, Taube-Koret prepared a human health risk assessment, a site cleanup plan, and a risk management plan ("RMP") "for the proposed cleanup and development of [] 901 San Antonio Road." (TAC ¶ 28.) The Water Board approved the site cleanup plan on May 12, 2006, (TAC ¶ 28(b)(ii)), and approved the RMP on June 22, 2006, (TAC ¶ 22(c)(ii)). Taube-Koret's contractors excavated and removed contaminated soil from 901 San Antonio Road in June and July 2006. (TAC ¶ 29(a)).

**C.     851 San Antonio Road**

Chubb alleges that Chevron owned and operated a service station at 851 San Antonio Road between 1960 and 1977, (TAC ¶ 92), and that hazardous substances including PCBs [polychorinated biphenyls] and "petroleum products adulterated with other hazardous substances not indigenous to petroleum or exceeding levels that naturally occur in the petroleum product" were released into the soil on that property in part because of spillage from leaking underground waste-oil storage containers and fuel-line leaks. (TAC ¶¶ 93(a)-(e).) Chubb also alleges that Stevenson operated a fast food restaurant at 851 San Antonio Road between 1977 and 2007. (TAC ¶ 100.) Chubb claims that Stevenson released hazardous substances left by Chevron during the construction and demolition of the restaurant, causing the contamination of previously uncontaminated portions of the property. (TAC ¶¶ 101, 104.)

3

On November 30, 2006, Taube-Koret purchased the property at 851 San Antonio Road for inclusion in the redevelopment project that included the property at 901 San Antonio Road. (TAC ¶ 30.) On December 18, 2006, Taube-Koret submitted to the Water Board a "Workplan for Phase II Investigation" for the project that included both San Antonio Road properties. (TAC ¶ 31). An addendum was filed on February 2, 2007, and the workplan and addendum were approved by the Water Board on February 7, 2007. (TAC ¶¶ 31-32.) On March 14, 2007, the Water Board issued Order No. R2-2007-0023, directing Taube-Koret to "implement the RMP pursuant to a time schedule." (TAC ¶ 33.) Chubb claims that the 851 San Antonio Road property became subject to this order upon its incorporation into Taube-Koret's redevelopment project. (*Id.*)

In January 2008, during the excavation of 851 San Antonio Road, Taube-Koret encountered contamination and submitted a "soil removal plan" to the Water Board. That plan was approved on February 5, 2008. (TAC ¶¶ 33(b)(i)-(iv).) On August 28, 2009, Taube-Koret submitted a report to the Water Board that "demonstrat[ed] compliance with [Water Board] Order No. R2-2007-0023." (TAC ¶ 34.) On September 9, 2009, the Water Board confirmed that Taube-Koret's actions "satisfied all requirements of the RMP and the RMP Addendum and advis[ed] that the [Water Board] ha[d] no further comments," indicating that Taube-Koret was in compliance with "all [Water Board] [o]rders issued to it . . . ." (TAC ¶ 35.)

**D.     Chubb's Payment of Costs Incurred by Taube-Koret**

In July 2006, Taube-Koret presented a claim for "continuing remediation" under an insurance policy Chubb had written on the property.[4] (TAC ¶¶ 41.) In July 2008, after the remdiation was completed, Taube-Koret made a claim for the reimbursement of all of its response costs. (*Id.*) Although Taube-Koret sought "approximately $3,260,531.98," Chubb determined that a portion of the claimed costs was the result of development of the property

---

[4] In its Second Amended Complaint, Chubb indicated that on July 20, 2006, Taube-Koret "presented a claim to Chubb pursuant [to] its Policy for the reimbursement of [Response Costs] it incurred in connection with the removal and remediation of hazardous substances released and/or otherwise disposed of at the Site by the Defendants." (SAC ¶ 30.)

4

rather than remediation, and it declined to cover either these costs or Taube-Koret's relate legal expenses. (TAC ¶ 44(a).) On December 4, 2008, "Chubb issued a check to [Taube-Koret] in the amount of $2,400,000, representing payment for all necessary [cleanup costs] claimed and incurred by [Taube-Koret]." (TAC ¶ 44.)

**E.     Procedural History**

Chubb filed the instant subrogation action on September 23, 2009, alleging that Defendants each bear responsibility for the hazardous substances that prompted the Water Board's cleanup orders and seeking recovery of the costs it incurred on behalf of Taube-Koret. The original complaint included CERCLA claims for cost recovery under § 107, subrogation under § 112(c), contribution under § 113(f), and declaratory relief under § 113(g), as well as, several supplemental state law claims. On February 23, 2010, the Court dismissed the original complaint with leave to amend. The Court held that the factual allegations of the complaint were insufficient to state a claim against Defendants. (Order of Feb. 23, 2010.) The Court also addressed several of Defendants' specific challenges "in hopes of streamlining the litigation going forward." (*Id.* 8:6-9.) In particular, the Court noted its agreement with the conclusion of another district court that "while the insurer could bring a subrogation action under CERCLA, if it were allowed to bring a direct action under Section 107, 'CERCLA's subrogation provision would be rendered nugatory.'" (*Id.* 8:25-28 (quoting *California Department of Toxic Substances Control v. City of Chico*, 297 F. Supp. 2d 1227, 1233 (E.D. Ca. 2004)).)

Chubb filed a First Amended Complaint on March 25, 2010, asserting a subrogation claim under CERCLA § 112(c) and several related state law claims.[5] On June 23, 2010, the Court dismissed that pleading without prejudice. With respect to the § 112(c) claim, the Court held that "while a Section 112(c) plaintiff is not required to show that the compensation it paid relates to a CERCLA claim that already has been resolved through settlement or litigation, a

---

[5] Chubb's First Amended Complaint asserted a claim for cost recovery under § 107(a) and subrogation under § 112(c) as a single action. The Court determined based on Chubb's opposition papers that Chubb had not asserted an independent § 107(a) claim. (Order of June 23, 2010 5 n.2.)

5

1  plain reading of Section 112(a) requires plaintiffs to plead that the compensation was paid for
2  damages or costs *resulting from a CERCLA violation*." (Order of June 23, 2010 7:20-23.) The
3  Court concluded that Chubb had not "connect[ed] the dots" between its payment to its insured
4  under the insurance policy, the costs its insured incurred, and the alleged CERCLA violations.
5  (*Id.*) Because it determined that it was "not yet clear that Chubb can state a viable CERCLA
6  claim," the Court elected to "defer its review of the remaining state-law claims." (*Id.* at 18:14-
7  15.)

8  On July 23, 2010, Chubb filed a Second Amended Complaint. The only federal claim for
9  relief in this pleading was a § 112(c) subrogation claim that did not invoke or refer to § 107. On
10 December 7, 2010, the Court granted Defendants' motions to dismiss, again with leave to
11 amend. It noted that § 112(c) allows subrogation only where a plaintiff pays compensation to a
12 "claimant," and that an entity may qualify as a "claimant" only "by demanding reimbursement
13 from the Superfund or demanding reimbursement from the liable party before presenting such a
14 demand to the Superfund." (Order of Dec. 7, 2010.) The Court observed that "Chubb does not
15 allege that Taube-Koret has presented a demand either to the Superfund or a liable party" and
16 "does not allege facts establishing that Taube-Koret is a 'claimant' for purposes of § 112(c)."
17 (*Id.* 7:11-17.) It also concluded that although "Chubb is not barred entirely from asseting a right
18 to subrogation if it can state a claim based on some other law, such as a contractual claim
19 governed by state law," (*Id.* 8:1-3), Chubb's state law claims as pled appeared to be barred by
20 the applicable statute of limitations. (*Id.* 22:16-25, 23:6-10). The Court "urge[d] Chubb to
21 address carefully the defects noted throughout [the order]," and noted that "[b]ecause the Court
22 has granted Defendants' motions to dismiss on two previous occasions, Chubb is cautioned that
23 unless these issues are addressed, further amendment may not be permitted." (*Id.* 28:25-29:1.)

24 On January 6, 2011, Chubb filed the operative TAC. This pleading attempts to renew
25 Chubb's claim for cost recovery under § 107(a) and again asserts a claim for subrogation under §
26 112(c) and related provisions of state law.

## II. LEGAL STANDARD

28 Dismissal under Fed. R. Civ. P. 12(b)(6) "is appropriate only where the complaint lacks

6

a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the court must construe the complaint in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).  At the same time, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).  Thus, a court need not accept as true conclusory allegations, unreasonable inferences, legal characterizations, or unwarranted deductions of fact contained in the complaint. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-755 (9th Cir. 1994). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. —, 129 S.Ct. 1937, 1590 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  In addition, a "court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck Ranch v. Bureau of Reclamation*, 823 F. Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)).

Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't of Corrs.*, 66 F.3d 245, 248 (9th Cir. 1995).  When amendment would be futile, however, dismissal may be ordered with prejudice. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

### III.  MOTIONS TO DISMISS

**A.     Cost Recovery Under § 107**

As they did earlier in these proceedings, Defendants contend that Chubb lacks standing to pursue a direct action for recovery of its insurance payments as environmental response costs

7

1  under § 107(a).[6]  As they did previously, they rely on *City of Chico*, 297 F. Supp. 2d 1227, in
2  which the court held that insurance payments made pursuant to a contractual obligation are not
3  "response costs" under CERCLA, and that an insurer is "not a party (innocent or otherwise) in
4  the CERCLA sense" and thus is ineligible to assert a claim under § 107.  In dismissing Chubb's
5  original complaint, this Court noted that Chubb had not "explain[ed] why its Section 107(a)
6  claim for cost recovery should not suffer the same fate as the insurance company's claim in *City*
7  *of Chico*."  Order of Feb. 23, 2010 9:4-5.  The Court stated that "[u]ntil Chubb can establish
8  standing to bring a Section 107(a) claim, the Court need not determine if the requisite elements
9  of the claim has been pled adequately." *Id.* 9:6-7.

10  Although it did not assert an independent § 107(a) claim in either its First Amended
11  Complaint or Second Amended Complaint, Chubb relies on the Court's statement in its order
12  dismissing the Second Amended Complaint that although Chubb's allegations did not support a
13  claim that Chubb is the subrogee of Taube-Koret's rights pursuant to § 112(c)(2), Chubb could
14  pursue a subrogation claim under other laws.[7]  Chubb attempts to distinguish *City of Chico*,

---

[6]  Pursuant to 42 U.S.C. § 9607(a), "[n]otwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section" enumerated potentially responsible parties "shall be liable for . . . any other necessary costs of response incurred by any other person consistent with the national contingency plan."

[7]  Chubb quotes the underlined portion of the passage below to imply that the Court offered § 107(a) as an example of "other law" under which Chubb could pursue a subrogation action.  This is a misreading of the Court's order.  The order stated:
> "[Chubb's failure to support a claim that Chubb is a subrogee under Section 112(c)(2)] d[oes] not mean that Chubb cannot pursue a subrogation claim under other laws.  For example, CERCLA § 107(a) establishes a right of action between a party that directly incurs response costs and the parties responsible for the contamination.  While CERCLA § 107(e)(1) "provides that a person who may be liable for a release under CERCLA may not transfer to any other person his or her liability pursuant to an indemnification or any other agreement," CERCLA Section 107(e)(2) "clarifies that (e)(1) does not bar a person liable under CERCLA or a guarantor from bringing subrogation actions." [*City of Chico*, 297 F. Supp. 2d at 1236 n. 12]  Thus while it has not shown that Taube-Koret is a "claimant" for purposes of CERCLA § 112(c)(2), Chubb is not barred entirely from asserting a right to subrogation if it can state a claim based on some other law, such as a contractual claim governed by state law."

Order of Dec. 7, 2010 7:20-8:2.  In its proper context, this passage indicates that § 107 does not

8

1  arguing that the insured in that case was not permitted to bring a claim under § 107 because it
2  was one of several parties responsible for the contamination at issue and thus only could seek
3  contribution under § 113(f). Chubb contends that in this case, because Taube-Koret could have
4  brought a § 107 claim on its own behalf, Chubb can stand in its shoes.

5  However, while Chubb's argument addresses one rationale offered by the court in *City of
6  Chico*, it does not challenge that court's basic structural argument, which this and other courts
7  have found persuasive, *see e.g.*, *Am. Int'l Specialty Lines Ins. Co. v. United States*, 2005 U.S.
8  Dist. WL 680159 (N.D. Cal. Mar. 24, 2005). As interpreted in *City of Chico*, CERCLA provides
9  for three different forms of recovery. Congress enacted § 107(a) "so that innocent parties–not
10 parties who were themselves liable–would be permitted to recoup the whole of their
11 expenditures." 297 F. Supp. 2d at 1232 (internal quotation marks and alterations omitted).
12 Congress also enacted § 113(f) so that parties which are liable themselves could seek
13 contribution against other potentially responsible parties. *Id.* Finally, Congress provided for
14 rights of subrogation under § 112(c).

15 The court in *City of Chico* observed that "[w]hen Congress provides for an express
16 remedy, the courts ordinarily cannot impose other remedies nor interpret one provision of a
17 statute providing for recovery so that another provision has not application." *Id.* at 1233 (citing
18 *United States v. Northrop Corp.*, 59 F.3d 953 (9th Cir. 1995)). While allowing the insurers of
19 innocent parties to seek the recovery of insurance payments through § 107(a) would not give the
20 insurer a greater remedy than its insured, it would render § 112(c) a nullity. In crafting the
21 language of § 112(c), Congress created an express right of insurers to assert CERCLA claims for
22 subrogation and at the same time established the limits of that right. This Court has explained
23 how these related to Chubb's claim, and it does so again below. Chubb seeks to elude those
24 limits by asserting a right to subrogation under a different provision–§ 107–that plainly was not
25 written for that purpose. Chubb has had multiple opportunities to state a claim under § 107(a),

---

27 preclude a liable party under CERCLA from a claim based on some *other* law, such as a state
28 law claim. The passage quotes with approval the very case holding that insurers could not state a
   claim under § 107.

9

1   and the Court is satisfied further amendment at this point would be futile.

2   **B.      Subrogation Pursuant to § 112(c)(2)**

3         Defendants move to dismiss Chubb's federal subrogation claim under § 112(c)(2),
4   alleging that Chubb has failed to show that it provided compensation to a "claimant" as defined
5   by the statute. Section 112(c)(2) provides that "[a]ny person . . . who pays compensation
6   pursuant to this Act to any claimant for damages or costs resulting from a release of a hazardous
7   substance shall be subrogated to all rights, claims, and causes of action for such damages and
8   costs of removal that the claimant has under this Act or any other law." Section 101(5) of the
9   statute defines "claimant" as "any person who presents a claim for compensation under this act."
10  In its order dismissing Chubb's Second Amended Complaint, the Court stated that "an entity
11  may be a 'claimant' either by demanding reimbursement from the Superfund or demanding
12  reimbursement from the liable party before presenting such a demand to the Superfund." Order
13  of Dec. 7, 2010 7:9-11. The Court concluded that "Chubb [had not] allege[d] that Taube-Koret
14  had presented a demand either to the Superfund or to a liable party." *Id.* 7:11-12.

15        In its opposition to each of the present motions to dismiss, Chubb contends that it is a
16  "person" that paid compensation pursuant to CERCLA to a "person," Taube-Koret, "who
17  presented a claim for compensation under CERCLA, for damages and costs resulting from a
18  release of a hazardous substance." *See, e.g.*, Pl.'s Op. to Chevron's Mot. To Dismiss 10:3-5. It
19  directs the Court's attention to paragraphs eight and forty through forty-four of the TAC.
20  However, the only "claim" alleged in these paragraphs (or anywhere in the complaint) is that
21  Taube-Koret "initially presented a claim for continuing remediation *to Chubb* pursuant to its
22  Policy in July 2006," and that Taube-Koret "presented a claim *to Chubb* for the reimbursement
23  of all of the Response Costs described [above] after completion of the remediation on July
24  2008." TAC ¶ 41 (emphasis added). The only conceivable basis of these claims would be
25  Chubb's obligations under the insurance policy. Chubb does not allege that before demanding
26  reimbursement under the policy, Taube-Koret had sought reimbursement from a liable party or
27  from the Superfund, and Chubb itself is not a "liable party."

28        This limitation on subrogation rights is consistent with the statute as a whole. For

10

example, § 113(g)(4) provides that "[n]o action based on rights subrogated pursuant to this section *by reason of payment of a claim* may be commenced under this title more than 3 years after the date of payment of such a claim." (emphasis added).  In addition, § 112(c) itself requires that compensation be paid "pursuant to this Act."  *See* Order of June 23, 2010 7:20-23 ("[A] plain reading of Section 112(c) requires plaintiffs to plead that the compensation was paid for damages or costs *resulting from a CERCLA violation*.").  Nothing in the statute supports Chubb's contention that compensation paid on an insurance claim constitutes compensation pursuant to CERCLA when the insured has not pursued a claim against a liable party or the Superfund.

**C.  State Law Claims**

Because it concludes that Chubb cannot state a viable federal claim, the Court now must decide whether to dismiss Chubb's state law claims on jurisdictional grounds or reach the merits of the claims.  Because the issues have been thoroughly briefed by the parties, and because it previously has given guidance with respect to the deficiencies in these claims, the Court concludes that it is in the interest of judicial economy to address the claims on the merits.

Defendants contend that all of Chubb's state law claims are time-barred.  In its most recent order, the Court determined that Cal. Code Civ. Proc. 338, which provides for a three-year limitations period for claims stemming from injury to real property, applies to all of the claims.  Order of Dec. 7, 2010.  It noted that the limitations period of § 338 "commences to run when the plaintiff knows, or should have known, of the wrongful conduct at issue."  *Id.* (quoting *Angeles Chem. Co. v. Spencer & Jones*, 44 Cal. App. 4th 112, 119 (Cal. App. 2d Dist. 1996)).  In addition, because Chubb has not suffered an injury itself but instead is asserting the claims of Taube-Koret, the limitations period began to run when *Taube-Koret* knew, or should have known, of the wrongful conduct.  *See Automobile Ins. Co. v. Union Oil Co.*, 85 Cal. App. 2d 302, 305 (Cal. App. 1948 ("[I]t seems only fair, right, just and equitable that one who is subrogated to the rights and remedies of another should be allowed the same time in which to enforce such rights that the law would have allowed to the person to whose rights and remedies he succeeded.").

11

1  Based upon the allegations of Chubb's Second Amended Complaint, Taube-Koret had
2  knowledge of contamination from at least some of the underground storage containers at 851 San
3  Antonio Road not later than 2004. Although Chubb alleges a "continuing violation" at 901 San
4  Antonio Road because of the operation of Ford Motors' dewatering system, any such continuing
5  violation presumably ceased not later than July 2006, when Taube-Koret submitted its claim to
6  Chubb for remediation of the site. Because the instant action was not filed until September
7  2009, any claim for real property damage that might have been brought by Taube-Koret at either
8  site appeared to be time-barred.

9  Chubb now contends that Taube-Koret did not incur an obligation to investigate the
10 property and learn of the contamination until it purchased the property on November 30, 2006.
11 However, Chubb does not dispute that both Taube-Koret and Chubb had actual knowledge of
12 contamination at 851 San Antonio Road at least by December 28, 2004, when Chubb issued an
13 endorsement to the insurance policy that excluded from coverage the "[p]ollution incident"
14 associated with underground storage tanks at the property. The later discovery of additional
15 contamination does not extend the limitations period, *CAMSI IV v. Hunter Technology Corp.*,
16 230 Cal. App. 3d 1525, 1537 (Cal. App. 1991), not does a change of ownership in the property,
17 *Beck Development Co. v. Southern Pacific Trans. Co.*, 44 Cal App. 4th 1160, 1216 (1996)
18 ("[T]he statute of limitations does not commence to run anew every time the ownership of the
19 property changed hands."). Taube-Koret's knowledge of at least some of the contamination in
20 2004 was sufficient to start the running of the limitations period.

21 Chubb also argues that the statute of limitations on an insurer's subrogation action should
22 be measured from the date the insurer pays the claim. However, the cases upon which Chubb
23 relies for this proposition arise in the context of third-party subrogation actions. *see e.g.*, *Smith*
24 *v. Parks Manor*, 197 Cal. App. 3d 872, 879 (Cal. App. 1987). Here, Chubb's payments were
25 made pursuant to claims by its insured. TAC ¶ 41. Because Taube-Koret's claims are time-
26 barred, Chubb may not overcome the bar through subrogation. Order of Dec. 7, 2010.

27 With respect to the property located at 901 San Antonio Road, Chubb contends that its
28 state law claims are not time-barred because it no longer alleges that Taube-Koret's claim in July

12

2006 was for the complete remediation of that site.  It asserts that although Taube-Koret in fact presented an environmental contamination claim on July 20, 2006, Taube-Koret continued to incur investigation and soil remediation costs until July 2008.  (TAC ¶¶ 5, 41.)  However, the TAC alleges explicitly that Taube-Koret's contractors excavated and removed contaminated soil from 901 San Antonio Road in June and July 2006, (TAC ¶ 29(a)), and that a vapor barrier was installed to prevent further contamination.  The pleading itself does not allege continuing contamination at 901 San Antonio Road after July 2006.

## IV.  ORDER

Pursuant to the foregoing discussion, and good cause therefor appearing, the motions to dismiss will be granted, without leave to amend.  The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

DATED: April 20, 2011

_____
JEREMY FOGEL
United States District Judge